Opinion issued December 1, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-10-01134-CR

01-10-01135-CR

———————————

Eloisa Medina, Appellant

V.

THE State of
Texas, Appellee



 



 

On Appeal from the 338th District Court

Harris County, Texas



Trial Court Case Nos. 1176048; 1252250

 



 

O P I N I O N

Appellant
Eloise Medina was convicted, pursuant to a jury verdict, of possession of
cocaine and sentenced by the trial court to 15 years’ confinement (the possession
case[1]).  The same evidence giving rise to that
conviction, coupled with other evidence presented to the trial court, was the
basis for the trial court’s additionally adjudicating guilt on an earlier
deferred charge, revoking probation on that deferred charge, and imposing a
sentence of 5 years’ confinement and a $300 fine (the adjudication proceeding[2]).  Appellant appeals both her conviction in the possession
case and her adjudication of guilt in the adjudication proceeding.  We reverse her conviction in the possession case,
and we affirm the trial court’s adjudicating guilt on her deferred charge in
the adjudication proceeding, but modify that judgment to delete the assessment
of the $300 fine.

THE POSSESSION CASE

Appellant was charged with
possession of cocaine that was seized from her house, where she resides with
her children, her parents, and her housemate, Maritza Martinez.  Martinez was charged with possession of the
same cocaine.  Appellant was not home
when the police executed the search warrant that led to the discovery of the
drugs, although she arrived home during the raid and was immediately
arrested.  Appellant’s sole point of
error on appeal of her conviction is that the “evidence was legally insufficient
in that the State failed to establish by proof to a high degree of certainty
(beyond a reasonable doubt) that Medina did knowingly or intentionally exercise
‘actual’ care, custody, control, or management of a controlled substance.”  

A.      Evidence Presented at Trial

In early 2010, the Houston Police
Department received a citizen tip about suspected drug dealing at appellant’s
address.  Surveillance was conducted on
the house for an initial 2-week period, which led to a search warrant that the
police allowed to expire unexecuted because they discovered that appellant was
out of town.  Police then conducted
additional surveillance over another 2 weeks, which led to a second search
warrant that was executed on February 17, 2010 at about 7:00 p.m.  The “targets” of the investigation were
appellant and Martinez.  

The two officers involved in the
surveillance of appellant’s home testified that—during the period in which they
watched the house “two to three days a week, if not more”—they observed many
visitors to the house staying five minutes or less.  These visitors arrived either on foot or by
car.  At least five people making short
visits to the house were observed each time the officers conducted surveillance
on the house.  One officer testified that
short visits to a residence by different people are consistent with drug dealing
activity.  That officer also testified
that, when no one was at appellant’s house, visitors were seen leaving
appellant’s door and going to another house that police believed to be a “drug
house.”  

At various times during their “month-long
. . . off and on” surveillance, the officers observed the door being answered
by appellant, Martinez, or both.  They
also observed both appellant and Martinez engage in “hand-to-hand exchange[s]”
with visitors at the door.  

On February 17, 2011, officers
watched the house from about 2:00 p.m. until they executed the warrant at about
7:00 p.m.  Appellant was not there during
that period, and there was no testimony about the last time she had been
present at the house.[3]  

Officer Ong,
the first officer to enter the house, testified to finding Martinez and
appellant’s minor son sitting on the couch in the living room watching
television.  He verified that no one else
was present in the house.  Ong and six others then searched the house.  Ong found a plastic
grocery bag wrapped up with a rubber band around it placed on a Santa Muerte shrine near the entrance to the kitchen from the
living room.  While he could not see
drugs inside the bag, he testified that his experience and training led him to
recognize this bag as containing contraband, in part because it was sitting
near the shrine.[4]  Field tests on the contents of the bag
confirmed that it contained crack cocaine. 
No fingerprint analysis or DNA testing was done on the plastic bag.  Later laboratory testing confirmed the bag contained
about 7 grams of cocaine. 

While the house was being searched,
appellant arrived home.  She was stopped
by the officers outside, taken into custody, and then brought inside the
house.  The search of the house revealed
several items indicating that appellant lives at the house, including utility
bills addressed to her.  No drugs, large
amounts of money, or firearms were found on appellant, and she did not appear
to be under the influence of any drugs when she was arrested.  

B.      Verdict
and Judgment                

The jury found appellant guilty of
“intentionally or knowingly” possessing more than 4 grams and less than 200
grams of cocaine.  After hearing
additional evidence on punishment, the court sentenced her to 15 years’ confinement.   

C.      Applicable
Law 

Standard of Review 

An appellate court reviews legal
and factual sufficiency challenges using the same standard of review.  See Griego v. State, 337 S.W.3d 902,
902 (Tex. Crim. App. 2011).  “Under this
standard, evidence is insufficient to support a conviction if considering all
record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each
essential element of the charged offense was proven beyond a reasonable doubt.”
 Gonzalez
v. State, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref’d) (citing Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979)).  Evidence
is insufficient under this standard in four circumstances: (1) the record
contains no evidence probative of an element of the offense; (2) the record
contains a mere “modicum” of evidence probative of an element of the offense;
(3) the evidence conclusively establishes a reasonable doubt; and (4) the acts
alleged do not constitute the criminal offense charged.  Gonzalez,
337 S.W.3d at 479; see Jackson, 443
U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11.  If an appellate court finds the evidence
insufficient under this standard, it must reverse the judgment and enter an
order of acquittal. Gonzalez, 337 S.W.3d at 479.

An appellate court “determine[s]
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence viewed in the light most favorable to the
verdict.”  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)
(quoting Hooper v. State, 214 S.W.3d
9, 16–17 (Tex. Crim. App. 2007)).  When
the record supports conflicting inferences, an appellate court presumes that
the factfinder resolved the conflicts in favor of the
verdict and defers to that resolution.  Id. (citing Jackson, 443 U.S. at 326, 99 S. Ct. at 2793).  “An appellate court likewise defers to the factfinder’s evaluation of the credibility of the evidence
and weight to give the evidence.”  Gonzalez, 337 S.W.3d
at 479.  In viewing the record, a
court treats direct and circumstantial evidence equally: circumstantial
evidence can be as probative as direct evidence, and “circumstantial evidence
alone can be sufficient to establish guilt.”  Clayton,
235 S.W.3d at 778 (quoting Hooper,
214 S.W.3d at 13).

Possession

To prove unlawful possession of a
controlled substance, “the State must prove that (1) the accused exercised
control, management, or care over the substance; and (2) the accused knew the
matter possessed was contraband.”  Evans v. State, 202 S.W.3d 158, 161
(Tex. Crim. App. 2006); see also Tex. Health & Safety Code Ann. § 481.002(38) (Vernon 2010) (“‘Possession’ means
actual care, custody, control, or management.”’).  

Possession need not be exclusive.  Evans,
202 S.W.3d at 162.  When the accused is not in exclusive
possession of the place where the controlled substance is found, then
additional, independent facts and circumstances must affirmatively link the
accused to the substance in such a way that it can reasonably be concluded that
the accused possessed the substance and had knowledge of it.  Poindexter
v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Kibble v. State, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.]
2010, pet. ref’d).  In other words, whether direct or circumstantial,
the evidence “must establish, to the requisite level of confidence, that the accused’s connection with the [contraband] was more than
just fortuitous.”  Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  “This
rule simply [reflects] the common-sense notion that a person—such as a father,
son, spouse, roommate, or friend—may jointly possess property like a house but
not necessarily jointly possess the contraband found in that house.”  Poindexter,
153 S.W.3d at 406. 


Links that may circumstantially
establish the sufficiency of the evidence to prove knowing possession include
(1) the defendant’s presence when a search is conducted; (2) whether the
substance was in plain view; (3) the defendant’s proximity to and the
accessibility of the substance; (4) whether the defendant was under the
influence of narcotics when arrested; (5) whether the defendant possessed other
contraband or narcotics when arrested; (6) whether the defendant made
incriminating statements when arrested; (7) whether the defendant attempted to
flee; (8) whether the defendant made furtive gestures; (9) whether there was an
odor of contraband; (10) whether other contraband or drug paraphernalia were
present; (11) whether the defendant owned or had the right to possess the place
where the substance was found; (12) whether the place where the substance was
found was enclosed; (13) whether the defendant was found with a large amount of
cash; and (14) whether the conduct of the defendant indicated a consciousness
of guilt.  Evans, 202 S.W.3d at 162 n.12.  

Not all of these factors must be
proved; rather, it is the cumulative logical force the factors have in proving
possession that we must consider.  See James v. State, 264 S.W.3d 215, 219
(Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).  Additionally, absence of some of the factors
is not evidence of innocence that must be weighed against the factors that are
present.  Id.  Rather, they are used to
assess the sufficiency of the evidence linking the defendant to knowing
possession of contraband.  See, e.g.,
Roberson v, State, 80 S.W.3d 730, 735–36 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d); Allen v.
State, 249 S.W.3d 680, 694 n.13 (Tex. App.—Austin 2008, no pet.) (explaining that presence or absence of factors “aid
appellate courts in determining the legal sufficiency of the evidence in
knowing possession of contraband cases”).

D.      The Parties’
Arguments

Appellant argues that the State
failed to prove a sufficient link between appellant and the contraband seized
to carry its burden to prove possession. 
She argues that the State’s theory that appellant “was in joint possession
of all the cocaine found in the home simply because she lived there and, on
prior occasions, had been observed engaging in what the police believed to be
drug transactions,” is insufficient as a matter of law to establish her
possession of the contraband seized in this case that she is charged with
possessing.  In addition to pointing to
the absence of nearly all of the factors courts use to establish links in
possession cases, she focuses on two prominent failings in the State’s case: (1)
appellant was not present at the home before or during the search, and “there
was no testimony regarding the date that [appellant] left or how long she had
been absent from the premises,” and (2) while two surveillance officers suspected
that the appellant had, on earlier occasions, engaged in hand-to-hand
transactions involving drug sales (with which appellant was not charged), there
was no evidence confirming that any of these alleged transactions involved
drugs.

The State acknowledges that “when
an accused is not in exclusive possession of the place where contraband is
found, it cannot be concluded [s]he had knowledge or control over the
contraband unless there are additional independent facts and circumstances
which affirmatively link h[er] to the
contraband.”  It asserts, however, that
it met its burden of demonstrating appellant’s possession with evidence of more
than appellant’s right to possession of the house in which contraband was
found.  It argues: (1) “that cars came
and went from the house, and visitors stayed no longer than five minutes, was
consistent with drug dealing,” (2) “that appellant was seen making hand to hand
transactions at the front door of her house,” (3) “that the cocaine was found
in plain view on a shrine often connected with drug dealing,” and (4) “that the
amount of cocaine seized from appellant’s house was significant—more than 6
grams, an amount large enough to indicate appellant knew of its
existence.”  According to the State, this
“evidence is legally sufficient to prove appellant’s guilt.”  

E.      Analysis

We agree with appellant that the
evidence at trial is not legally sufficient to demonstrate that she possessed
the cocaine seized from her house.  

First, appellant was not present at
her house when the drugs were found, and there was no evidence about how long
she had been absent from the house. Surveillance testimony confirmed she had
not been there in the four hours leading up to the raid.  Because she was not present, and because
there was at least one other person—Martinez—with the right of possession
over the house who was present in the same room where the drugs were found, absent
additional links between appellant and the seized drugs, the State cannot
demonstrate appellant’s possession of them. 
The State relies heavily upon the surveillance officers’ testimony that,
in the weeks leading up to execution of the warrant, (1) they observed visitor
traffic at the house consistent with drug dealing, during which appellant was
observed sometimes answering the door, and (2) appellant appeared to conduct
hand-to-hand transactions with visitors. 


The State cites Poindexter v. State for the proposition
that the “relative probative value of all the evidence was legally sufficient”
to show appellant “exercised care, custody, control, and management over the
contraband.”    Poindexter is distinguishable in several ways.  In that case, there was evidence presented at
trial that a confidential informant who had purchased drugs at the defendant’s
house told the police that he “personally observed the [defendant] in
possession of a quantity of cocaine,” and that the defendant hid those drugs in
the ceiling of a linen closet.  153 S.W.3d at 404. 
Two days after this purchase by the confidential informant, the police
executed a warrant on the residence—while the defendant was away—and discovered
drugs and paraphernalia, among other places, secreted in the ceiling of the
linen closet.  Id. at 405.  The Court of Criminal Appeals found this
discovery in the ceiling to be significant in linking the defendant to the
contraband because the confidential informant had said the linen closet was
where the defendant kept his drugs, and because it was secreted in a place most
accessible to the defendant.  Id. at 410–11.   Finally,
although there was someone other than defendant present when the confidential
informant purchased drugs at the defendant’s house, the court characterized
testimony that no one else appeared to live at defendant’s residence as
“crucial testimony, as it demonstrates that there was no affirmative evidence
that any other person lived in the same house or exercised care, control, or
custody over either the house or the drugs.”  Id. at 412.        

Here, unlike in Poindexter, appellant did not have exclusive rights of possession over the
house from which the cocaine was seized. 
Nor was there testimony, like there was in Poindexter, that appellant had ever possessed the drugs seized or
had possessed any other drugs before the drugs at issue were found at her
house.  Finally, unlike the drugs seized
from the closet ceiling in Poindexter,
the drugs found in appellant’s house were found in the living room (while she
was not present)—the same room that Martinez and appellant’s son were in at the
time of the raid—rather than
secreted away somewhere that appellant alone had primary access.    

The evidence about visitor traffic
at the house during the month before the search warrant was executed supports
an inference that drug dealing was occurring at appellant’s house.  But because appellant was not in exclusive
possession of the house, that evidence does not provide a link between the
drugs seized on February 17, 2010 and appellant.  

The evidence about appellant
appearing to engage in hand-to-hand transactions could support an inference
linking appellant to drug dealing (with which she was not charged), but none of
the transactions witnessed were confirmed to have involved money or drugs, and
these transactions were temporally distant from the discovery of the drugs in
appellant’s house.  These transactions were not observed
the same day that the search warrant was executed.  Rather, they were observed sometime during
the month before the execution of the search warrant, when officers conducted
surveillance “two to three days a week, if not more.” Even if evidence of engaging in hand-to-hand transactions alone was
sufficient to establish possession of contraband, such evidence could not
support a conviction of possession of a certain type or quantity of drugs.  And, although there was testimony that
appellant was residing at the house during the two weeks leading up to the
execution of the warrant, there is no evidence about when she was last at the
house before the raid; in fact she was not seen at the house at all during the
day the search warrant was executed until she arrived during the evening raid.   

Evidence of a defendant’s
conducting hand-to-hand transactions characteristic of drug transactions can
provide a link between the defendant and recovered drugs, even when the drugs
are not found in the defendant’s exclusive possession.  E.g.,
Lair v. State, 265 S.W.3d 580, 587
(Tex. App.—Houston [1st Dist.] 2008, pet. ref’d)
(testimony that hand-to-hand transaction occurring in defendant’s presence in
vehicle that defendant was driving provided sufficient link between defendant
and drugs later seized from car to demonstrate possession, despite argument
that drugs belonged to another vehicle occupant); Washington v. State, No. 01-10-00357-CR, 2011 WL 4398545, at *4
(Tex. App.—Houston [1st Dist.] Sept. 22, 2011, no pet.
h) (testimony that defendant and two other men were
seen conducting numerous hand-to-hand transactions with bottle of PCP was
sufficient to demonstrate his possession of the bottle of PCP, when bottle was
recovered in close proximity to defendant). 
But these cases do not involve the temporal and proximal disconnect of
this case.  The State has not cited any
cases, and we have not located any, in which a defendant’s conducting
unconfirmed hand-to-hand drug transactions at some time in the month-long
period before drugs were seized from a residence over which the defendant had
non-exclusive possession provides a sufficient link to establish the
defendant’s possession of those drugs.  

The only other evidence the State
cites is “that the cocaine was found in plain view on a shrine often connected
with drug dealing,” and “that the amount of cocaine seized from appellant’s
house was significant—more than 6 grams, an amount large enough to indicate
appellant knew of its existence.”  The
State did not adduce evidence as to the ownership of the shrine.  That similar shrines are found in other homes
in the Hispanic community targeted in narcotic investigations does not mean
that such shrines are not equally common in the community in homes not involved
in drug sales.  In this case, other
things—in addition to the bag
containing drugs—were found
on the shrine, including food, money, and alcohol.  For this very reason, the trial court refused
to allow the State to characterize the shrine located in appellant’s house as a
narcotics shrine.[5]    The
discovery of the cocaine on the shrine, especially given that there is no
evidence about when the drugs were placed there, is not sufficient to establish
a link between appellant and possession of the cocaine seized in her absence.  

The presence of a significant
amount of contraband is a factor that was relevant to establishing a
defendant’s possession of contraband in Carvajal v. State,
529 S.W.2d 517, 520 (Tex. Crim. App. 1975).  In Carvajal, the defendant was found with other people in a
room with thirty-seven pounds of marihuana in  plain view on the floor, and
additional amounts were found on the defendant’s person.  Id.  Presumably, the quantity of drugs in that
case was relevant to knowledge and possession because of its sheer size.  In other cases, quantity can be relevant to
showing that a defendant intends to distribute narcotics rather than just
possess it for personal use.  Poindexter, 153 S.W.3d
at 412.

In this case, officers seized 7
grams of crack cocaine.  One officer
testified that this quantity is an amount that is more than for one person’s
personal use and indicative of drug dealing. 
Another officer characterized this amount as “mediocre” that could be
either for personal use or for dealing. 
While this testimony supports an inference that there was drug dealing
going on in the house, the State fails to articulate how the quantity of
cocaine seized in this case ties appellant, who was not present, to possession
of that cocaine.  See Allen, 249 S.W.3d at 698 (noting that “[t]he question is
whether the amount of cocaine discovered should be factored into the
determination of any link between appellant and the cocaine under the
circumstances,” and concluding that “the factor of a large quantity of contraband
[was] of little or no value in linking appellant to the cocaine” under the
circumstances presented); Robertson,
80 S.W.3d at 740 (concluding that 24 grams of cocaine found in vehicle near
seat where passenger was sitting, while “not an insignificant amount,” was
insufficient to link driver to possession of that cocaine, in part because “it
was still small enough to be concealed on someone’s person”).   

Circumstantial evidence of
possession should not be analyzed in isolation, but rather should be “viewed in
combination and its sum total” to determine if there is sufficient evidence
connecting appellant to the actual care, custody, or control of the drugs at
issue.  Evans, 202 S.W.3d at 166.  The question is whether the “logical force of
the combined pieces of circumstantial evidence, . . . coupled with reasonable
inferences from them, is sufficient to establish, beyond a reasonable doubt,
that appellant exercised actual care, custody, control, or management of the
cocaine” seized.  Id.    

Here, we conclude that the
circumstantial evidence is insufficient to support appellant’s conviction when
viewed in combination and its sum total. 
We thus sustain appellant’s first point of error, reverse her conviction
for possession of cocaine, and render a judgment of acquittal.  

THE ADJUDICATION PROCEEDING

Pursuant to a 2009 plea agreement,
appellant admitted to possessing more than 4 grams and less than 200 grams of
cocaine.  On January 15, 2010, the trial
court entered an Order of Deferred Adjudication and placed appellant on community
supervision for a period of four years. 
As conditions of this community supervision, the trial court ordered
that appellant, among other things (1) commit no
offense against the laws of this or any other State or of the United States,
and (2) participate in a Community Service Restitution Program.    

Shortly after appellant was
arrested in the possession case, the State filed a Motion to Adjudicate Guilt,
alleging that appellant violated terms of her community service by possessing
between 4 and 200 grams of cocaine on February 17, 2010 (the same facts alleged
in the possession case), and by failing to participate in the Community Service
Restitution Program at the rate ordered by the court.  

The court held a hearing on the
State’s motion to adjudicate a few days after the punishment hearing and
pronouncement of judgment in the possession case.  At the adjudication hearing, the State called
only one witness, appellant’s probation officer, because the court already
“heard the testimony in the trial.”  Appellant’s
counsel likewise informed the court that he planned to “just . . . proffer the
testimony that you heard already in the other case.”  At the close of the hearing, the trial court
signed a judgment adjudicating appellant’s guilt, revoking her deferred
adjudication community supervision, and sentencing her to 5 years’ confinement
and a $300 fine.  

A.   Applicable Law

“Appellate review of an order
revoking probation is limited to abuse of the trial court’s discretion.”  Rickels v. State,
202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (quoting Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)).  In determining questions regarding sufficiency
of the evidence in probation revocation cases, the burden of proof is by a
preponderance of the evidence.  Id. “[A]n order revoking probation must
be supported by a preponderance of the evidence; in other words, that greater
weight of the credible evidence which would create a reasonable belief that the
defendant has violated a condition of his probation.”  Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim.
App. 1974).  

When the State alleges a
“conviction” for another crime as the basis for revocation, that conviction
cannot serve as the basis for the revocation until it is final.  Prince v. State, 503 S.W.2d 777, 779 (Tex. Crim. App. 1974).  If the State instead alleges a new law
violation, proof of a final conviction is not necessary so long as the State
proves by a preponderance of the evidence that the new law violation was
committed.  Green v. State, 528 S.W.2d 617, 619
(Tex. Crim. App. 1975).  

B.   The Parties’ Arguments

Appellant argues that there was
“legally insufficient evidence to support the trial court’s findings and
conclusion that [appellant] violated the terms and conditions of deferred
adjudication community supervision,” because (1) the trial court erred by
relying on the conviction from the possession case—which was not final because appellant was
planning to appeal—as a basis
for finding appellant had committed a new law violation, and (2) appellant’s probation officer’s testimony
demonstrated that appellant did not violate the community service provisions of
her sentence.  Appellant additionally
requests that the $300 fine assessed by the court in its judgment be deleted,
as that was not part of the trial court’s oral rendition of judgment.  

The State responds that it did not “rely upon the ‘conviction’ as the
basis for its motion to revoke probation.” 
Rather, it relied upon the evidence that the trial court heard in the possession
case, which “proved by a preponderance of the evidence that appellant committed
an offense in violation of the conditions of her community supervision,”
rendering the finality of the conviction for that conduct irrelevant.  The State acknowledges that it was error for
the court to assess a $300 fine in the judgment that was not orally pronounced
and notes our authority to modify the judgment to delete the fine.      

C.   Analysis      

The trial court heard the evidence
presented to the jury in the possession case. 
It also heard additional direct evidence at the punishment phase in the possession
case about appellant’s commission of new law offenses that violated her
deferred adjudication terms and conditions, including testimony by appellant’s
father that he was aware of the crack and powder cocaine appellant kept in the
house and sometimes sold.  Appellant does
not argue that the combination of this evidence is insufficient to demonstrate,
by a preponderance of the evidence, that she committed an alleged new law
violation.  Rather, her only argument is
that the State improperly relied upon a conviction that was not final.

We agree with the State that the
finality of the judgment in the possession case was irrelevant because the
court heard legally sufficient evidence establishing a new law violation by a
preponderance of the evidence, and relied upon that evidence to revoke
appellant’s probation.  See Green, 528 S.W.2d at 619; see also Martinez v. State, 635 S.W.2d
762, 767 (Tex. App.—Corpus Christi 1982, no pet.).  We thus affirm the trial court’s adjudication
of appellant’s guilt.

It is undisputed that the trial
court’s written judgment included assessment of a $300 fine that was not part
of the court’s oral pronouncement of appellant’s sentence.  “When there is a conflict between” an oral
pronouncement and the court’s written judgment, “the oral pronouncement
controls.”  Taylor v. State, 131 S.W.3d 497, 500
(Tex. Crim. App. 2004) (affirming court of appeal’s modification of judgment to
remove fine assessed in written judgment but not orally pronounced).  We thus modify appellant’s sentence to delete
the assessment of the $300 fine.  The
court’s judgment revoking appellant’s deferred adjudication, adjudicating
guilt, and imposing a sentence of 5 years’ confinement is otherwise
affirmed.  

CONCLUSION

We reverse the trial court’s
judgment in the possession case (trial court number 1252250; appellate court
number 01-10-01135-CR).  We affirm as
modified the trial court’s judgment in the adjudication proceedings (trial
court number 1176049; appellate court number 01-10-01134-CR).  

 

 

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

Publish.   Tex. R. App. P. 47.2(b).











[1]           trial court cause number 1252250; appellate court cause
number 01-10-1135-CR

 





[2]           trial court cause number 1176048; appellate court cause
number 01-10-1134-CR





[3]
          One surveillance officer
testified that she believed that appellant was inside the home at the time the
warrant was executed by other officers, but it is clear from the other evidence
that this testimony was erroneous. The State concedes that appellant was absent
from the home when the police executed the warrant.

  





[4]
          Officer Ybanez,
who was also involved in the surveillance of appellant’s home and in the
execution of the search warrant,
testified that Santa Muerte shrines are used to ask for blessings over material
objects.  Items are placed “at the foot
of it that you wish to have luck or love or money, blessing, that type of
thing.”  There were several items located
on the shrine in this case, including food, money, and alcohol.  Ybanez testified
that she has seen such shrines before in residences where search warrants were
executed looking for narcotics, and that they are favored by people engaging in
illegal narcotics activity.  





[5]
          The trial court heard evidence
outside the presence of the jury that, while such shrines to this saint are
common to drug dealers in the community, they are also used in other homes for
other purposes with no connection to drugs. 
The court thus ruled that the officer could testify that she had seen
similar shrines in homes where narcotics were seized, but that she could not
opine to the jury that this is a shrine used only by drug traffickers.  The court reasoned that any such opinion is
misleading, unsupported, and highly prejudicial.