

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00146-CR

_____

SIMON MACEYRA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1776672

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

A jury convicted Appellant Simon Maceyra of possession with intent to deliver a controlled substance of 200 grams or more but less than 400 grams, a first-degree felony. *See* Tex. Health & Safety Code Ann. § 481.112(e). The jury assessed punishment at 20 years' confinement and a $15,000 fine. The trial court sentenced Maceyra in accordance with the jury's verdict.

In two points, Maceyra argues that (1) the evidence is insufficient to show that he possessed methamphetamine with the intent to deliver, and (2) the trial court erred by admitting extraneous offense evidence. We hold that the evidence was legally sufficient to show that Maceyra knowingly possessed the controlled substance and that the trial court did not abuse its discretion by admitting the extraneous offense evidence. We overrule both points on appeal and affirm the trial court's judgment.

## I. Background

Fort Worth Police Department narcotics officers investigated a residence in Fort Worth. Officer William Snow testified that people would go to the residence and spend only a few minutes before leaving—behavior that is consistent with drug trafficking. While conducting surveillance, officers observed people going to a front door of the residence as well as to a side door of the residence. As part of the investigation, Officer Snow used confidential informants to make controlled purchases at the residence. Officer Snow explained that on one day, a confidential

informant made a purchase using the side door of the residence, and then on a later date, a confidential informant made a purchase by using the front door.

After the surveillance and drug buys, police obtained a search warrant for the residence. Officer Snow concluded that it was necessary to have the SWAT team assist in executing the search warrant. Corporal Javier Romero, with the Fort Worth Police Department SWAT team, testified that his team conducted reconnaissance of the location before executing the warrant.[1] According to Corporal Romero, SWAT team officers entered the residence at both the front and side doors.

Officer Snow and his team entered the residence after the SWAT team determined it was safe. When Officer Snow entered the residence, Maceyra and his girlfriend, Heide, were detained in the back bedroom.[2] Inside a closet in that bedroom, officers found men's clothing, two digital scales, plastic baggies, and a bag that contained approximately 307 grams of methamphetamine. Officers also found a shoe box containing $2,681 in cash predominantly in twenty-dollar bills. Inside of the bedroom, police officers found a Crown Royal bottle with Maceyra's name on it as

---

[1]State's Exhibit 23, a 32-second reconnaissance video that the SWAT team recorded before executing the search warrant, showed that the residence, though one structure, had two distinct parts—the original front part of the residence with the front door entrance and a second part of the house that appeared to be an addition. The addition is where the side door and the bedroom Maceyra was detained in were located.

[2]At trial, this bedroom was sometimes called the "back bedroom" because, though adjacent and nearer to the side entrance, the bedroom was at the back of the house and farthest from the front door.

well as Maceyra's vaccination record. Written on a mirror in that bedroom was "Heide hearts Simon."

Officers found a digital scale and a smaller amount of methamphetamine in the front part of the residence where Maceyra's father, Samuel Maceyra, was detained. Maceyra and Samuel were both arrested.

## II. Sufficiency Challenge

In Maceyra's first point, he argues that the evidence is insufficient to show that he possessed methamphetamine with intent to deliver.

## A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the

4

necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021). We must scrutinize circumstantial evidence of intent as stringently as other types of evidence. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). When the record supports conflicting inferences, a reviewing court must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Petetan v. State*, 622 S.W.3d 321, 337 (Tex. Crim. App. 2021).

## B. Applicable Law

"'Possession' means actual care, custody, control, or management." Tex. Health & Safety Code Ann. § 481.002(38). The elements for possession of a controlled substance with intent to deliver are that the defendant

- possessed a controlled substance in the amount alleged;

5

• intended to deliver the controlled substance to another; and

• knew that the substance in his possession was a controlled substance.

*Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd).

A defendant's mere presence at the scene of an offense is insufficient to establish possession. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). A factfinder may infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference. *Id.* at 413–14. A non-exclusive list of factors that may indicate a link connecting the defendant to the knowing possession of contraband in the form of a controlled substance include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 414. It is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

6

## C.  Discussion

Maceyra specifically argues that the evidence is insufficient to show that he possessed methamphetamine with intent to deliver based on the lack of affirmative links connecting him to the methamphetamine. Maceyra contends that there is no eyewitness testimony or direct evidence connecting him to the methamphetamine inside of the bedroom closet. He contends that there was no evidence that (1) he was under the influence of narcotics when arrested, (2) he possessed narcotics or contraband when arrested, (3) he made incriminating statements when arrested, (4) he attempted to flee, (5) he made furtive gestures, (6) there was an odor of contraband, (7) he owned or had the right to possess the place where the contraband was found, or (8) his conduct indicated a consciousness of guilt. But counterbalancing factors link Maceyra to the methamphetamine.

Maceyra was present in the residence when officers executed the search warrant. He was detained in the back bedroom and told officers that he had been there the whole time. Officers found a large amount of methamphetamine, digital scales, and plastic baggies in the bedroom closet. The State presented evidence that the bedroom where the methamphetamine was found was Maceyra's.

- Male clothing was found inside of the bedroom closet.

- Maceyra's vaccination record was found in the bedroom.

- Maceyra's name was on a liquor bottle in the bedroom.

- Maceyra's cell phone was found in the bedroom.

- "Heide hearts Simon" was written on the mirror in that bedroom.

- The bedroom was consistently referred to as Maceyra's bedroom throughout the trial.

Because Maceyra indicated to the officers that he had been in the bedroom the whole time, he was in close proximity to the methamphetamine and had access to it. And Maceyra concedes in his appellate brief that he was in possession of a large amount of cash, that there was drug paraphernalia present, and that the place where the methamphetamine was discovered was enclosed.

Further, the State offered evidence that there were two separate "setups" for drug distribution from the residence—one from the front of the house and one from the side entrance. Maceyra's father was detained in the front part of the house where officers also found a digital scale and a smaller amount of methamphetamine. Maceyra was detained in the back bedroom where there was evidence of the distribution of methamphetamine including a large quantity of methamphetamine, plastic baggies, digital scales, and a large amount of cash.

Circumstantial evidence of possession should not be analyzed in isolation but should be viewed in its totality to determine if there is sufficient evidence connecting the defendant to the actual care, custody, or control of the drugs at issue. *Medina v. State*, 555 S.W.3d 581, 589–90 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The

8

question is whether the logical force of the combined circumstantial evidence when coupled with reasonable inferences from that evidence is sufficient to establish beyond a reasonable doubt that the defendant exercised actual care, custody, control, or management of the drugs seized. *Id.* at 590.

Undoubtedly, the nature of the contraband in the closet supported an inference that drugs were being distributed from the bedroom holding the closet. That inference is strengthened by the fact that surveillance revealed drug-buying behavior occurred through the side exterior door, the entry closest to the back bedroom. The evidence supports an inference that Maceyra occupied the back bedroom from which drugs were being distributed and which held the closet storing those drugs—that closet (1) being an enclosed space contained within and only accessible from that bedroom and (2) that functioned to store the possessions of that bedroom's occupants. Beyond the inference that the occupants of the bedroom would logically use that room's closet to store their possessions is evidence that Maceyra specifically used the closet; he told police that his dog was in the closet. Viewing the circumstantial evidence in the light most favorable to the verdict, we conclude that a rational jury could have found Maceyra possessed methamphetamine with the intent to deliver. *See Evans*, 202 S.W.3d at 161, 166. We overrule the first point.

### III. Extraneous Offense Evidence

In his second point, Maceyra argues that the trial court erred by admitting extraneous offense evidence. During its case-in-chief, the State requested the trial

court's permission to present evidence of an extraneous offense under Rule 404(b) of the Texas Rules of Evidence arguing that Maceyra had opened the door to the evidence by putting the issue of his intent and his knowledge before the jury. The State sought to introduce evidence that Maceyra was arrested for a drug offense several months after the offense the subject of this appeal. The State explained:

> When a case involves conduct that is intentional or knowing, plus a specific intent, for example, in a possession with intent to deliver case, there is case law that says the State is entitled to offer extraneous conduct in order to show that specific intent.
>
> Also, the defense has put squarely before this jury [Maceyra's] knowledge of the drugs in this case, that he did not have knowing possession. This extraneous offense would show that he, in fact, would have knowledge of methamphetamine, and he is knowingly in possession of it on that occasion . . . .
>
> Evidence of the extraneous offense would show [Maceyra's] plan or scheme, specifically his drug-dealing activities, that this is part of what he does on a regular basis. This would show a lack of accident. The defense has suggested to this jury that [Maceyra] was, again, not intentionally or knowingly in possession, that this was just a mistake of his mere presence in this room, and we are entitled to show evidence that his conduct, specifically, his knowing possession -- or his possession was not unintentional or unknowing.
>
> . . . And the defense has left the false impression with the jury that Samuel Maceyra was the sole person involved in any of the activity in that house. The defense has essentially used objections to hearsay to leave an incomplete and false picture of what was happening in that house, what information officers had regarding [Maceyra's] involvement.

Maceyra countered that he had not opened any inquiry into his character but rather had asked contextual questions about the circumstances of this event. Maceyra

10

stated that he had not called any witnesses and that merely cross-examining witnesses does not provide a basis for the State to offer evidence of extraneous offenses.

The trial court overruled Maceyra's objections and noted that *Bass v. State* supports a decision that a defense's opening statement can open the door to extraneous offense evidence to rebut the defensive theory presented in the defense's opening statement. 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). The trial court then recessed for the day. The following morning, Maceyra renewed his objection to the extraneous offense evidence and noted that the "inflammatory value is far outweighed by any probative value." *See* Tex. R. Evid. 403. The trial court permitted the State to offer evidence of the extraneous offense.

The evidence admitted showed that Maceyra was released on bond for the offense that resulted in this appeal. After his release, officers were trying to locate Maceyra and began surveilling a motel room where they believed he was staying. Officers observed Maceyra leave the motel in Heide's vehicle, and Officer Snow followed them. Officer Snow testified that when the vehicle stopped at a gas station, Maceyra was detained. Officer Snow observed a plastic baggie containing what appeared to be methamphetamine just outside the vehicle door that Maceyra exited. Officer Snow opined that he believed that drug trafficking was occurring from the motel room. At the motel, Maceyra's relatives gave permission to search a vehicle parked outside the room Maceyra occupied, and officers discovered 270 grams of methamphetamine.

11

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

## B. Applicable Law

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Tex. R. Evid. 401. Relevant evidence is generally admissible. Tex. R. Evid. 402. Rule 404(b)(1), however, precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion. Tex. R. Evid. 404(b)(1). Rule 404(b)(2) allows for such evidence to be admitted for other purposes, "such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2).

The purposes listed in Rule 404(b)(2) "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. Indeed, extraneous evidence may also be introduced to rebut a defensive theory. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002); *Richardson v. State*, 328 S.W.3d 61, 71 (Tex. App.—Fort Worth 2010, pet. ref'd) (per curiam). Thus, while Rule 404(b) limits character evidence, it is nevertheless a rule of inclusion. *De La Paz*, 279 S.W.3d at 343; *Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *4 (Tex. App.—Fort Worth Dec. 29, 2022 pet. ref'd) (mem. op., not designated for publication).

Otherwise admissible evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *see Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich*, 2019 WL 311153, at *7). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is

substantially outweighed by one or more of the dangers listed in Rule 403—including unfair prejudice. *Id.* at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

## C. Discussion

Maceyra first argues that the evidence was inadmissible under Rule 404(b). Maceyra acknowledges that in his opening statement he outlined that mere presence, without more, is insufficient to show possession resulting in the State's desire to present to the jury the fact that he had been arrested a few months later for possession of methamphetamine. However, he argues that "the fact that the two charges were so similar is exactly why the trial court should have denied the State's request to present the extraneous offense evidence" because it was akin to character conformity. The State responds that Maceyra attempted to negate the knowledge and intent elements of the charged offense when he introduced his theory that his presence in the house was mere happenstance. The State contends that the trial court did not abuse its discretion by admitting the complained-of evidence over Maceyra's Rule 404(b) objection because the trial court could have reasonably admitted the evidence for non-character-conformity reasons. We agree.

During his opening statement, Maceyra's counsel stated, "What you're going to hear is that [Maceyra] happened to be in the house at the time the police showed up." Counsel continued, "[Y]ou're just going to hear a lot of talk about how [Maceyra] was

14

physically present in a cluttered, decrepit home that had drugs in it, and that's why he's here in front of y'all this morning." Thus, Maceyra presented a defensive theory that he had no knowledge of the methamphetamine, that it did not belong to him, and that he just happened to be present in the house with the methamphetamine. Such a defensive theory presented in the defense's opening statement opens the door to the admission of extraneous offense evidence. *Bass*, 270 S.W.3d at 563. We hold that the trial court could have reasonably concluded that the extraneous evidence offense was not offered for character conformity purposes, but instead was offered to rebut Maceyra's defensive theory. *Richardson*, 328 S.W.3d at 71.

Maceyra next argues that the evidence was prohibited under Rule 403. At trial, Maceyra's counsel objected that "its probative value -- the inflammatory value is far outweighed by any probative value because it's not probative of did he possess with intent on a certain day." Maceyra's general Rule 403 objection did not identify for the trial court which of the five distinct Rule 403 grounds for excluding evidence precluded the admission of the evidence, and, therefore, his objection was insufficient to preserve his complaint for review. *See* Tex. R. App. P. 33.1(a)(1); *Andrews v. State*, No. 02-17-00052-CR, 2018 WL 3385661 at *4 (Tex. App.—Fort Worth July 12, 2018, pet. ref'd) (mem. op., not designated for publication); *Checo v. State*, 402 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Moreover, we would reach the same conclusion even if Maceyra had preserved the error. To determine whether evidence is admissible in the face of a Rule 403

15

objection, the trial court must conduct a balancing test. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Montgomery*, 810 S.W.2d at 389. In a Rule 403 analysis, we must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate its probative force, and (6) the likelihood that presenting the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

Once a Rule 403 objection is invoked, the trial judge must engage in the balancing test required by that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). The trial court is presumed to engage in the required balancing test once Rule 403 is invoked. *Id.* at 195–96. A trial court is not required to sua sponte place into the record any findings it makes or conclusions it draws when engaging in this test, *id.* at 195, and Maceyra did not request the trial court to make the findings on the record.

As previously discussed, the evidence was inherently probative to rebut Maceyra's defensive theory that he just happened to be present in the house with the methamphetamine. The State needed the evidence to show Maceyra knowingly possessed the methamphetamine, and presenting the evidence did not consume an

16

inordinate amount of time. The jury was instructed that they could only consider the evidence of the extraneous offense for limited purposes:

> beyond a reasonable doubt that [Maceyra] committed such other crimes, wrongs, or acts, if any were committed, and even then they may only consider those other crimes, wrongs, or acts in determining the proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any, in connection with the crime alleged in the indictment in this case, and for no other purpose.

We presume a jury follows the instructions in a charge absent evidence to the contrary. *Scott v. State*, 555 S.W.3d 116, 124 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). This instruction equipped the jury to evaluate the probative force of the evidence, not give it undue weight, and not be confused by why it was admitted. Maceyra did not overcome his burden to show that the admission of the extraneous offense evidence's probative value was substantially outweighed by unfair prejudice. *See James*, 623 S.W.3d at 546–47. We overrule Maceyra's second point.

## IV. Conclusion

Having overruled Maceyra's two points, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 6, 2025