Evelyn V. Keyes, Justice
A jury convicted appellant, Gregory Scott, of the first-degree felony offense of aggravated robbery and, after finding the allegations in two enhancement paragraphs true, assessed his punishment at sixty-five years' confinement.[1] In two issues, appellant contends that the trial court erroneously (1) gave an unconstitutional explanation of "beyond a reasonable doubt" during voir dire; and (2) allowed a bailiff to testify during the punishment phase about appellant's absence from a portion of the guilt-innocence phase and the punishment phase.
We affirm.
Background
A. Factual Background
Marc Hill, the complainant, owned and operated a laundromat in north Houston. Hill kept three chairs outside in front of the building where customers could sit while waiting for their laundry. On the afternoon of August 13, 2013, Hill was sitting in one of the chairs with his aunt, who was sitting in another chair, and his cousin, who was sitting on top of a bucket near the chairs. One chair remained unoccupied.
*119 After a while, appellant approached on foot and sat down in the remaining chair. Appellant, Hill, and Hill's family members engaged in small talk about the weather, and then appellant asked if the laundromat had a restroom inside. Hill responded that it did, and he gave appellant directions to the restroom. Nothing about this conversation or appellant's behavior seemed unusual to Hill.
A couple of minutes after appellant went inside the laundromat, two more men walked up to the laundromat from around the corner of the building. One of the men stopped in the doorway before turning around and pointing a pistol at Hill. The other man pointed a gun at Hill's relatives. The men told Hill and his relatives to get up and not to run away. The men led Hill inside the laundromat where he saw all of his customers lying on the floor while appellant held them at gunpoint. Appellant took purses, cell phones, and car keys from the customers. One of the men forced Hill to give him all of the change from the laundromat, and the man also took money from Hill's pocket.
The three robbers left the laundromat after another customer arrived. Hill grabbed his gun from his office and ran after the men. One of the men shot at Hill, who ducked around the corner of the building. When Hill looked back at the men, all three of the robbers started shooting at him. Hill fired back with his own gun, and he then heard a car quickly leave the area. Shortly after the men left, Hill was able to retrieve some of the customers' belongings from where they had been discarded further down the street.
Yvonne Brown, who lived near the laundromat, noticed a car that was parked on the street but facing the wrong direction. She "didn't think too much of it," but then she heard gunshots. She looked out her window and saw three men: one driving the car and the other two, who had guns, running to get into the car. The car then sped away from the area. Brown was not able to identify any of these men.
Christopher Howard, who was working as a mechanic at a shop near the laundromat, heard multiple gunshots. Once the shooting was over, he looked outside and saw a car driving by. Howard testified:
The car that was driving by had three people in it, two people in the front seat and one person was jumped (sic) over the front seat driver and passenger with his legs hanging out the driver's side door so they couldn't get the door shut; and there was blood all over the bottom of the car.
Howard saw Hill, who was holding a gun, put his gun in a bag, walk out into the street, and pick up a purse before walking back to the laundromat. Howard did not identify any of the men in the car.
Harris County Sheriff's Office (HCSO) Deputy T. Bissell was driving in the area when he saw a car that had several bullet holes pass him and pull into a shopping center. When the car turned, Deputy Bissell saw blood "all over the driver's side door," and he contacted dispatch, asking if there had been reports of any shoot-outs in the area. Instead of turning in the direction of a nearby hospital, the car turned into a neighborhood. When the driver of the car saw Deputy Bissell, who was driving a marked HCSO truck, the driver sped towards a residence and parked. The driver and one of the passengers-appellant-ran up to the house and started banging on the door, yelling for the residents to come outside. Deputy Bissell tried to speak with the men to determine if someone in the car needed medical assistance, but both of the men ran off. Deputy Bissell was unable to apprehend either of the men, and when he returned to the car, he *120 discovered that the third man in the car, Ronald Sanders, was deceased.
Houston Police Department officers processed the car for evidence. Officers found handguns lying on the floorboards of the driver's seat and the front passenger seat. Officers also found multiple cell phones and cell phone cases, rolls of quarters and loose quarters, a shirt, and a syringe. Appellant could not be excluded as a major contributor to a DNA mixture found on one of the handguns. Appellant also could not be excluded as a contributor to the DNA profile found on a cell phone case, a syringe, a spoon, and a t-shirt. Firearms analysis revealed that a projectile recovered from the scene of the shooting at the laundromat was fired from the handgun that had appellant's DNA.
B. Trial Proceedings
During voir dire, the trial court addressed topics such as the presumption of innocence and the burden of proof. The trial court made the following statements:
[T]he burden of proof in all criminal cases rests with the State and never shifts to the defense. The defense does not have to prove his innocence. Why? Because he is presumed by law to be innocent. The State has to prove guilt beyond a reasonable doubt. The law does not define reasonable doubt anymore. It is what you determine after hearing all of the evidence.
Reasonable doubt is, however, not meant to mean beyond all doubt or beyond a shadow of a doubt or what you may have heard on some of the television shows. The only way anyone could probably be convinced of something beyond all doubt or beyond a shadow of a doubt is if you were actually there and witnessed the event. And in that case, you would be waiting to be called as a witness and not as a juror.
Defense counsel did not object to this explanation of "beyond a reasonable doubt."[2]
The trial court's charge included the following instructions:
All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.... The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.
The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.
It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.
In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."
After the State rested its case in chief, on a Friday afternoon, the trial court recessed the proceedings for lunch. Appellant was present at that time. At the end of the lunch recess, appellant did not appear *121 in the courtroom, and defense counsel stated that he had not been able to find appellant in the courthouse. The trial court held a hearing outside the presence of the jury to determine whether appellant's absence was voluntary, and two deputies testified concerning their efforts to locate appellant in the courthouse. The trial court granted defense counsel's request to recess the case until Monday morning.
When proceedings resumed on Monday morning, appellant did not appear. Defense counsel informed the court that he had been unable to contact appellant and, thus, he did not know why appellant had not appeared. The trial court denied defense counsel's motion for a further continuance and determined that it would proceed in appellant's absence.
Defense counsel rested his case in the presence of the jury. After hearing closing arguments, the jury found appellant guilty of aggravated robbery.
After a brief recess, the punishment phase began and appellant still did not appear. At the beginning of this phase, the trial court stated, "For your information, ladies and gentlemen of the jury, the defendant left Friday at 1:05 p.m., and he did not return. The law allows him to be sentenced in absentia. We're now going to proceed with the punishment phase of the trial."
On appellant's behalf, defense counsel entered a plea of "not true" to the allegations in two enhancement paragraphs. The State introduced evidence that appellant had two prior convictions. The State also called Deputy Banks, a bailiff for the 245th District Court who had been helping out in the trial court. Deputy Banks testified that appellant left the courtroom on the Friday before and did not come back. Deputy Banks testified that she looked for appellant around the courthouse and did not see him. She did not see an ambulance outside, which might have indicated that appellant had a medical emergency that prevented his return to court, nor did she see police officers arresting anyone outside. She testified that she had no knowledge of what, if anything, happened to appellant or why he was not present. Defense counsel did not lodge any objections to Deputy Banks' testimony.
The prosecutor mentioned appellant's absence during its punishment-phase argument, stating,
And then I want you to remember the respect that [appellant] showed this Court. You'll notice he's not here. He heard enough. He knew how it was going, and he took off. That's what he thinks of our time. That's what he thinks of your time. That's what he thinks about this whole system.
Defense counsel did not object to this argument.
The jury assessed appellant's punishment at sixty-five years' confinement. This appeal followed.
Explanation of "Beyond a Reasonable Doubt"
In his first issue, appellant contends that the trial court erroneously gave an unconstitutional explanation of the "beyond a reasonable doubt" burden of proof. Specifically, appellant argues that the trial court erred when it stated during voir dire that reasonable doubt "is what you determine after hearing all of the evidence."
A. Governing Law
The Due Process Clause of the United States Constitution requires the State to prove a defendant's guilt beyond a reasonable doubt. Victor v. Nebraska , 511 U.S. 1, 22, 114 S.Ct. 1239, 1251, 127 L.Ed.2d 583 (1994) ;
*122 In re Winship , 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The Constitution does not prohibit trial courts from defining "reasonable doubt," nor does it require them to do so. Victor , 511 U.S. at 5, 114 S.Ct. at 1243. "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." Id. (internal citations omitted). Courts must avoid defining reasonable doubt "so as to lead the jury to convict on a lesser showing than due process requires." Id. at 22, 114 S.Ct. at 1251. "[T]aken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." Id. at 5, 114 S.Ct. at 1243 (quoting Holland v. United States , 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954) ).
In addressing challenges to the constitutionality of a definition of beyond a reasonable doubt, the Supreme Court has held that "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." Id. at 6, 114 S.Ct. at 1243 (emphasis in original) (quoting Estelle v. McGuire , 502 U.S. 62, 72 & n.4, 112 S.Ct. 475, 482 & n.4, 116 L.Ed.2d 385 (1991) ). Thus, the question is "whether there is a reasonable likelihood the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard" requiring the State, as a matter of due process, to prove every element of the charged offense beyond a reasonable doubt. Id.
In Paulson v. State , the Texas Court of Criminal Appeals held that trial courts are not required to instruct juries on the definition of "beyond a reasonable doubt," and the court further stated that "the better practice is to give no definition of reasonable doubt at all to the jury." See 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). The Court of Criminal Appeals has also held that a trial court does not err when it includes in the jury charge an instruction that "[i]t is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof exclude all 'reasonable doubt' concerning the defendant's guilt." Woods v. State , 152 S.W.3d 105, 114-15 (Tex. Crim. App. 2004). Furthermore, the court has held that "each juror must decide for himself what amount of proof would constitute the threshold of beyond a reasonable doubt." Murphy v. State , 112 S.W.3d 592, 597 (Tex. Crim. App. 2003) ; Haro v. State , 371 S.W.3d 262, 265 (Tex. App.-Houston [1st Dist.] 2011, pet. ref'd) ("Under Texas law ... each individual juror decides the amount of proof required to meet the threshold of beyond a reasonable doubt."). Trial court statements during voir dire that individual jurors "decide what beyond a reasonable doubt means to you" and that jurors "listen to everything" and "weigh it all" in determining whether the State proved its case beyond a reasonable doubt do not "taint the presumption of innocence owed to the defendant or apply the beyond-a-reasonable-doubt standard of proof to the cause before it." See Haro , 371 S.W.3d at 264, 266 ; Marshall v. State , 312 S.W.3d 741, 743-44 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd) (holding that trial court's statement during voir dire that "the Legislature figures everybody is reasonable and they would know a reasonable doubt when they see it" was explanation of "existing law with regard to reasonable doubt" and did not taint presumption of innocence or vitiate impartiality of jury).
B. Analysis
During voir dire, the trial court made the following comments concerning the *123 State's burden of beyond a reasonable doubt:
[T]he burden of proof in all criminal cases rests with the State and never shifts to the defense. The defense does not have to prove his innocence. Why? Because he is presumed by law to be innocent. The State has to prove guilt beyond a reasonable doubt. The law does not define reasonable doubt anymore. It is what you determine after hearing all of the evidence.
Reasonable doubt is, however, not meant to mean beyond all doubt or beyond a shadow of a doubt or what you may have heard on some of the television shows. The only way anyone could probably be convinced of something beyond all doubt or beyond a shadow of a doubt is if you were actually there and witnessed the event. And in that case, you would be waiting to be called as a witness and not as a juror.
(Emphasis added).
Appellant contends that the trial court's statement during voir dire that reasonable doubt "is what you determine after hearing all of the evidence" could have been construed as a definition of reasonable doubt.[3] He argues that "if jurors are left to their own devices for determining what the standard is," there is an "unavoidable" risk that the comment diminished the State's burden because "[i]f even one juror believed, for example, that a mere preponderance of evidence sufficed, then a unanimous verdict was not reached in a constitutional manner."
Appellant, however, cites no law holding that such a statement-that a reasonable doubt "is what you determine after hearing all of the evidence"-is erroneous. Instead, the law is to the contrary. In Murphy , which involved a challenge for cause made against a prospective juror on the issue of future dangerousness in a death penalty case, the Court of Criminal Appeals stated that "each juror must decide for himself what amount of proof would constitute the threshold of beyond a reasonable doubt" and that "prospective jurors may form their own definitions of proof beyond a reasonable doubt and they are not challengeable for cause based upon the type and amount of evidence they require to reach that level of confidence." 112 S.W.3d at 597, 598. This Court has also stated that "each individual juror decides the amount of proof required to meet the threshold of beyond a reasonable doubt." Haro , 371 S.W.3d at 265 ; see also Johnson v. State , 263 S.W.3d 405, 417-18 (Tex. App.-Waco 2008, pet. ref'd) (holding that trial court's statement that beyond a reasonable doubt is "what it means to you" did not "invite the panelists to redefine the standard of proof beyond a reasonable doubt" and did not incorrectly state law); Rogers v. State , 795 S.W.2d 300, 306 (Tex. App.-Houston [1st Dist.] 1990, pet. ref'd) (holding that trial court's statement that "the bottom line is going to be what beyond a reasonable doubt is to you" was not erroneous and that court "was merely telling the jurors to use their common sense").
The trial court's statement that reasonable doubt "is what you determine after hearing all of the evidence" was not an incorrect statement of the law. Furthermore, the trial court instructed the jury in the charge that:
All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense *124 is proved beyond a reasonable doubt.... The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.
The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.
It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.
In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."
"Absent evidence to the contrary, a jury is presumed to follow the instructions set forth in the court's charge." Haro , 371 S.W.3d at 267. The instructions to the jury, taken as a whole, instruct the jury on the necessity that appellant's guilt be proved beyond a reasonable doubt and correctly convey the concept of reasonable doubt. See Victor , 511 U.S. at 5, 114 S.Ct. at 1243.
We conclude that there is not a reasonable likelihood that the jury understood the trial court's instructions to allow conviction based on proof insufficient to meet the beyond a reasonable doubt standard. See id. at 6, 114 S.Ct. at 1243. Thus, assuming that this complaint was properly preserved for appellate review,[4] we hold that the trial court did not err when it made this statement during voir dire.
We overrule appellant's first issue.
Bailiff's Testimony Concerning Appellant's Absence
In his second issue, appellant contends that the trial court erroneously allowed Deputy Banks to testify in the punishment phase concerning appellant's absence from the proceedings. Specifically, appellant argues that Deputy Banks' testimony violated the Confrontation Clause because appellant was entitled to confront the witnesses against him, which "includes the literal right of a defendant to be present *125 to see the witness and to have the witness face the defendant."
A. Governing Law
The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. CONST . amend. VI. The Confrontation Clause protects a defendant's right to physically face those witnesses who testify against him as well as his right to conduct cross-examination. Pennsylvania v. Ritchie , 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) ; Macias v. State , 539 S.W.3d 410, 421 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd). The Confrontation Clause's "essential purpose" is
to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.
Woodall v. State , 336 S.W.3d 634, 641-42 (Tex. Crim. App. 2011) (quoting Mattox v. United States , 156 U.S. 237, 242-43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) ); Macias , 539 S.W.3d at 421.
The Court of Criminal Appeals has held that "within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, absent a waiver of that right through defendant's own conduct." Miller v. State , 692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (quoting Baltierra v. State , 586 S.W.2d 553, 556 (Tex. Crim. App. 1979) ). This right is addressed in Code of Criminal Procedure article 33.03, which provides:
In all prosecutions for felonies, the defendant must be personally present at the trial ... provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.
TEX. CODE CRIM. PROC. ANN . art. 33.03 (West 2006). When there is evidence before the trial court to support a conclusion that the defendant's absence from the trial after a jury has been selected is voluntary, the trial court may permissibly continue the trial in the defendant's absence. See Moore v. State , 670 S.W.2d 259, 261 (Tex. Crim. App. 1984) (holding that trial court reasonably could have inferred that defendant's absence was voluntary when defendant, who had been released on bond, was present in court afternoon before, had been advised by court and counsel when and where to appear, and neither court nor counsel received communication from defendant explaining his absence).
Thus, a defendant may waive his Sixth Amendment right to be physically present at trial to confront the witnesses against him if, after the jury has been selected with him in attendance, he voluntarily absents himself from the proceedings. See Miller , 692 S.W.2d at 90 ; see also Taylor v. United States , 414 U.S. 17, 18-20, 94 S.Ct. 194, 195-96, 38 L.Ed.2d 174 (1973) (per curiam) (holding that defendant waives Sixth Amendment right to be present if, after trial has begun in his presence, he voluntarily absents himself from proceedings);
*126 Tracy v. State , 14 S.W.3d 820, 826 (Tex. App.-Dallas 2000, pet. ref'd) (stating that under Sixth Amendment, defendant must be present at commencement of trial proceedings, but after that point, defendant's voluntary absence from trial does not violate his right to be present during all phases of trial); Wortham v. State , 750 S.W.2d 326, 327 (Tex. App.-Beaumont 1988, no pet.) (holding that defendant may waive right to be present at trial by voluntarily failing to appear after selection of jury).
Generally, to preserve a complaint for appellate review, the party must make his complaint to the trial court by timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. See TEX. R. APP. P . 33.1(a). Confrontation Clause claims are subject to this general preservation requirement. See Davis v. State , 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) ; see also Reyna v. State , 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that defendant failed to preserve Confrontation Clause complaint for appellate review when defendant, in his trial objection, " 'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence"). Thus, a defendant's failure to object on Confrontation Clause grounds at trial waives a Confrontation Clause complaint for appellate review. See Paredes v. State , 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding that defendant failed to preserve Confrontation Clause complaint for appellate review when trial objection was solely on hearsay grounds).
B. Analysis
Here, it is undisputed that appellant was present during voir dire and the State's case-in-chief. At the close of the State's case, on Friday afternoon, the trial court recessed for lunch. Appellant did not return to the courtroom. The trial court held a hearing outside the presence of the jury and heard testimony from two bailiffs concerning their attempts to locate appellant in the courthouse. At defense counsel's request, the trial court decided to recess the proceedings until Monday morning. Appellant still did not appear on Monday morning, and defense counsel stated that he had been unable to contact appellant and thus did not know why he had failed to appear. The trial court continued the proceedings, and the jury found appellant guilty of the offense of aggravated robbery. Appellant remained absent during the punishment phase. In this phase, the State called Deputy Banks, a bailiff, to testify concerning her attempts to locate appellant in and around the courthouse on Friday afternoon when he failed to return from the lunch recess. Defense counsel did not object to Deputy Banks' testimony.
On appeal, appellant does not argue that the trial court erred by proceeding to a guilty verdict and then to the punishment phase in his absence. Instead, he argues that allowing Deputy Banks to testify concerning his absence violated his rights under the Confrontation Clause because he was not present to see Banks testify face-to-face. Defense counsel, however, did not object to Deputy Banks' testimony on the basis that allowing her testimony about appellant's absence, while appellant was not physically present in the courtroom, violated his rights under the Confrontation Clause; nor did defense counsel object to Deputy Banks' testimony on any other basis. As a result, because defense counsel failed to object to Deputy Banks' testimony or otherwise argue to the trial court that allowing Banks' testimony constituted a violation of appellant's Confrontation Clause rights, we hold that appellant has failed to preserve this complaint for appellate *127 review. See TEX. R. APP. P . 33.1(a) ; Davis , 313 S.W.3d at 347 (holding that Confrontation Clause complaints are subject to general error-preservation requirements).
We overrule appellant's second issue.
Conclusion
We affirm the judgment of the trial court.

See Tex. Penal Code Ann . § 29.03 (West 2011).

Later in voir dire, defense counsel asked several members of the venire, "What is a reasonable doubt?" One member replied, "So, there is no definition; so, it would be your assessment of what it would be." Defense counsel responded that there used to be a definition of beyond a reasonable doubt, but "now it's up to the individual juror."

We note that the challenged statement was not included in the trial court's instructions in the written jury charge and that appellant does not raise a complaint about charge error on appeal.

It is undisputed that defense counsel did not object to the trial court's statement during voir dire. In their appellate briefs, the parties discuss a recent Court of Criminal Appeals case, Proenza v. State , which held that complaints that the trial court improperly commented on the weight of the evidence in violation of Code of Criminal Procedure article 38.05 are not procedurally defaulted if the defendant does not object at trial. See 541 S.W.3d 786, 801 (Tex. Crim. App. 2017) (holding that claims of improper judicial comments under article 38.05 are not within Marin v. State 's "third class of forfeitable rights," but that "the right to be tried in a proceeding devoid of improper judicial commentary is at least a category-two, waiver-only right" under Marin ); see also Marin v. State , 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) (setting out three categories of rights for purposes of determining whether right can be procedurally defaulted by failing to object in trial court), overruled on other grounds by Cain v. State , 947 S.W.2d 262 (Tex. Crim. App. 1997). The parties raise the question of whether, under Proenza , appellant procedurally defaulted his complaint about the trial court's statement during voir dire by failing to object or whether the due process implications surrounding a trial court's comments on the burden of proof make appellant's complaint a "category-two, waiver-only right" under Marin . Because it is clear that the trial court's statement that beyond a reasonable doubt "is what you determine after hearing all of the evidence" is a correct statement of the law, we do not address whether appellant procedurally defaulted his complaint by failing to object to this statement at the time it was made.