**Opinion issued July 11, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00860-CR

————————————

**DURON ROBIN LEWIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1517015

## MEMORANDUM OPINION

Duron Lewis was convicted of aggravated sexual assault and sentenced to 60 years' confinement. *See* TEX. PENAL CODE § 22.021(a). In three issues, Lewis contends that (1) the trial court abused its discretion in admitting the forensic report of a non-testifying analyst, (2) he received ineffective assistance of counsel

during the guilt-innocence phase of trial, and (3) he received ineffective assistance of counsel during the punishment phase of trial.

We affirm.

## Background

One evening in February 2014, the complainant, pseudonymously referred to as Sarah Brown, was walking from her apartment to a nearby drugstore, when she noticed a white car pulling up behind her. A man, later identified as Lewis, got out of the back of the car, grabbed Brown by the arm, and forced her into the backseat with her head positioned on the floorboard.

Inside the car, there were four men speaking both English and Spanish. They placed a blindfold over Brown's eyes and threatened to kill her if she did not cooperate. The men then drove Brown to an apartment and took her to an upstairs room. Once upstairs, the men removed Brown's clothing, held her down, and sexually assaulted her.

The following morning, the men dressed Brown, put her in the backseat of the car with her head positioned on the floorboard, drove her to a parking lot, and abandoned her there after stealing her wallet. Brown took a bus to her friend's house and then called her boyfriend, who picked her up and drove her to the hospital.

At the hospital, Brown provided the police with a statement and underwent a forensic examination, which revealed trauma consistent with having been sexually assaulted. DNA samples collected from various areas of Brown's body were sent to Bode Laboratory for DNA analysis. Analyst S. Gault testified that male DNA was found on swabs of Brown's vagina, outer labia majora, labia minora, and left breast.

Officer J. Pena with the Houston Police Department Sex Crimes Unit reviewed the Combined DNA Index System (CODIS) Offender Report and discovered that Lewis's DNA positively matched DNA collected from Brown. Officer Pena created a photographic lineup that included Lewis's photograph. The lineup was shown to Brown, who circled Lewis's photo as well as the photo of a second unrelated man, as Brown was not 100 percent certain of her identification.

Officer Valentin and Officer Daniel with the HPD Sex Crimes Unit met with Lewis and his attorney and obtained a consensual buccal swab from Lewis. The Houston Forensic Science Center compared the DNA profile from the swab obtained from Lewis with the DNA profiles from the swabs obtained from Brown.

Lewis could not be excluded as a possible contributor to the male DNA profile from the vaginal swabs. The probability that a randomly chosen unrelated individual would be included as a possible contributor was approximately 1 in 22 quintillion for African Americans. (Lewis is black.) Lewis could not be excluded

as a possible contributor to the major component of the DNA mixture from the outer labia majora swabs. The probability that a randomly chosen unrelated individual would be included as a possible contributor to the major component of the DNA mixture was approximately 1 in 68,000 African Americans. Finally, Lewis could not be excluded as a possible contributor to the DNA mixture obtained from the labia minora swabs. The probability that a randomly chosen unrelated individual would be included as a possible contributor was approximately 1 in 46 quadrillion for African Americans.

Lewis was indicted, tried, and convicted of aggravated sexual assault. After Lewis was sentenced, trial counsel filed a motion to withdraw. The trial court granted the motion and appointed a public defender to represent Lewis on appeal. Through his newly-appointed counsel, Lewis moved for a new trial, alleging that he received ineffective assistance of counsel during both phases of trial. The trial court denied the motion. Lewis appeals.

### Admission of Forensic Report

In his first issue, Lewis contends that the trial court abused its discretion in admitting the Bode forensic report through the testimony of S. Gault, a Bode analyst who did not actually test the swabs obtained from Brown or develop the DNA profiles. Lewis contends that the admission of the report through Gault's surrogate testimony violated his Sixth Amendment right of confrontation. *See*

*Paredes v. State*, 462 S.W.3d 510, 517–18 (Tex. Crim. App. 2015) (holding that admission of testimonial lab report through surrogate testimony violates Confrontation Clause). The State responds that Lewis has not preserved the issue for appellate review because he did invoke his right to confrontation at trial. We agree with the State.

A timely and reasonably specific objection is required to preserve error for appellate review. TEX. R. APP. P. 33.1(a). An objection must comport with the issue raised on appeal. *Fuller v. State*, 827 S.W.2d 919, 928 (Tex. Crim. App. 1992); *Smith v. State*, 236 S.W.3d 282, 291 (Tex. App.—Houston [1st Dist.] 2007, pet ref'd). If an objection made in the trial court differs from the complaint raised on appeal, the defendant has not preserved any error for review. *Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994).

Confrontation Clause claims are subject to this general preservation requirement. *Scott v. State*, 555 S.W.3d 116, 126 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Thus, a defendant's failure to object on Confrontation Clause grounds at trial waives a Confrontation Clause complaint for appellate review. *Id.*

At trial, Lewis made a general evidentiary objection that the State had failed to lay a "proper foundation" for the report's admission because Gault "did not do the analysis." *See* TEX. R. EVID. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce

5

evidence sufficient to support a finding that the item is what the proponent claims it is."). But he did not make a Confrontation Clause objection. Thus, Lewis has waived any Confrontation Clause argument on appeal. *See Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (holding defendant waived Confrontation Clause issue when he asserted only basis for admission of cross-examination testimony "was to attack the victim's credibility"); *Mitchell v. State*, 238 S.W.3d 405, 408–09 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (noting "[e]ven constitutional error may be waived by failure to object at trial" and holding defendant waived review of issue on appeal because he did not object to testimony on Sixth Amendment grounds at trial); *Campos v. State*, 186 S.W.3d 93, 97–98 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that "because appellant objected only to [witness]'s testimony on hearsay grounds, and not constitutional grounds, he did not preserve" complaint that testimony violated Confrontation Clause).

We overrule Lewis's first issue.[1]

---

[1] In his appellate brief, at the very end of the section addressing the trial court's admission of the forensic report, Lewis contends that, to the extent his trial counsel's objection failed to preserve his Confrontation Clause complaint, trial counsel rendered ineffective assistance. However, Lewis fails to address either prong of this ineffective-assistance claim, and we therefore decline to consider it here. *See* TEX. R. APP. P. 38.1(i).

**Ineffective Assistance of Counsel**

In his second and third issues, Lewis argues that the trial court abused its discretion in denying his motion for new trial because he established that he received ineffective assistance of counsel during both the guilt-innocence and punishment phases of trial. The State responds that the record is not sufficiently developed to establish that Lewis received ineffective assistance at either phase of trial.

**A.    Applicable law and standard of review**

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Cotton v. State*, 480 S.W.3d 754, 756 (Tex. App.—Houston [1st Dist.] 2015, no pet.). When the motion alleges ineffective assistance of counsel, we review the totality of circumstances of the representation to determine whether the trial court's ruling was "so clearly wrong as to lie outside the zone of reasonable disagreement." *Id.* (internal quotations and citation omitted).

To prevail on a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Macias v. State*, 539 S.W.3d 410, 415 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Under the first prong, "the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. This requires the defendant to prove

"that counsel's performance fell below an objective standard of reasonableness, considering the facts of the particular case and judged at the time of counsel's conduct." *Ex parte Gonzales*, 204 S.W.3d 391, 393 (Tex. Crim. App. 2006).

Under the second prong, "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This requires the defendant to prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Macias*, 539 S.W.3d at 415.

In reviewing a claim for ineffective assistance of counsel, we are "highly deferential" to trial counsel. *Macias*, 539 S.W.3d at 415–16. We indulge a "strong presumption" that trial counsel's performance "fell within the wide range of reasonable professional assistance." *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013).

To prove that counsel's performance was deficient, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Strickland*, 466 U.S. at 689). "Any allegation of ineffectiveness must be firmly founded in the record,

which must demonstrate affirmatively the alleged ineffectiveness." *Blackwell*, 193 S.W.3d at 21. And "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Thus, if the record does not contain affirmative evidence of counsel's reasoning or strategy, we normally presume that counsel's performance was not deficient. *Blackwell*, 193 S.W.3d at 21. "In rare cases, however, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy." *Id.*

**B.    Analysis**

Lewis contends that trial counsel rendered ineffective assistance by failing to (1) consult a DNA expert, (2) interview potential alibi witnesses, or (3) develop mitigating evidence. We consider each contention in turn.

**1.    Failure to consult DNA expert**

First, we consider whether Lewis established that trial counsel rendered ineffective assistance by failing to retain a DNA expert to testify at trial or otherwise assist in trial preparation.

Appellate counsel did not subpoena trial counsel to appear at the hearing on Lewis's motion for new trial, and trial counsel did not appear at the hearing voluntarily. Thus, to show that trial counsel failed to retain a DNA expert,

9

appellate counsel presented trial counsel's case voucher, which did not include costs for experts. And to show that trial counsel's failure to retain a DNA expert constituted ineffective assistance, appellate counsel presented a letter from the Director of the Center for Statistical Genetics at Baylor College of Medicine, Professor Suzanne Leal.[2] Leal's letter states in full:

> I have reviewed the Houston Forensic Science Center's DNA case file [for Lewis's case]. There are biases which could affect the calculation of the presented probabilities and also of obtaining DNA matches, which include 1) that the laboratory calculated the random match probability (RMP) for the sperm component of the mixtures involved in the case by deconvoluting the simple mixture and treating the "major contributor" as a single source when calculating the RMP; 2) there is a high likelihood of accidentally finding a match unrelated to the case in the CODIS DNA database; and 3) the random match probability is not reliably applied in this case. Additionally, the interpretation of the presented probabilities is not straightforward and would require detailed information about the databases included in the CODIS search.
>
> It would be highly advisable to have an expert with expertise in forensic DNA analysis and statistical genetics consult on this case.

Appellate counsel argued that HFSC had used the "wrong statistic" to calculate the random match probability, i.e., the probability that a randomly selected, unrelated person in a given population group would have the same DNA profile as the evidentiary sample, assuming the unrelated person was not in fact the

---

[2] Appellate counsel also presented a table showing the size of the CODIS database; a chapter from the National Research Council's 1996 genetics report; various law journal articles; and *Young v. United States*, 63 A.3d 1033 (D.C. 2013), an opinion that addresses how to rebut evidence of random match probability.

source of the DNA in the sample. Appellate counsel further argued that Lewis was prejudiced by trial counsel's failure to consult with an expert because an expert's testimony regarding the correct statistical analysis would have affected the credibility of the DNA report and would have shown that it was "less likely that this happened as the State said."

Lewis makes the same arguments on appeal. He contends that, had trial counsel retained a DNA expert, it would have improved trial counsel's understanding of DNA analysis and statistical genetics and thus "would have helped him raise the questions raised in [Leal]'s letter for effective cross-examination of the Bode and HFSC analysts." Lewis emphasizes that Leal's letter identifies areas wherein the protocols used by HFSC "were at best controversial."

To establish that counsel was ineffective for failing to retain an expert witness, Lewis had to present evidence showing that an expert was available and could have offered beneficial testimony. *See Jones v. State*, 500 S.W.3d 106, 116 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that defendant failed to prove trial counsel rendered ineffective assistance for failing to engage two expert witnesses when defendant failed to present "evidence showing that such experts were available or that either could have offered beneficial testimony"); *Cantu v. State*, 993 S.W.2d 712, 719 (Tex. App.—San Antonio 1999, pet. ref'd) ("A defendant who complains about trial counsel's failure to call witnesses must show

11

the witnesses were available and that he would have benefitted from their testimony").

But Lewis has not shown that Leal (or any other expert) would have been available to testify on Lewis's behalf. Nor has Lewis shown that testimony from Leal (or another expert) would have benefitted him.

In her letter, Leal states that the method by which HFSC calculated the RMP was "biase[d]." But Leal fails to show that a different method would have resulted in a different RMP. Likewise, in the letter Leal concludes that there is a "high likelihood" of finding an unrelated match in the CODIS DNA database and that the RMP was "not reliably applied" in this case. But she does not explain how she reached her conclusions. She does not quantify the probability of finding an unrelated match in the CODIS database. Nor does she explain how the RMP was unreliably applied. Leal's letter is conclusory.

The HFSC concluded the chance that Lewis's DNA profile might incorrectly match the evidentiary profiles obtained from the vaginal swabs and labia minora swabs of the complainant was exceedingly low—approximately 1 in 22 quintillion for African Americans. Thus, a recalculation of the RMP would be unlikely to influence a jury unless it drastically increased the probability that a randomly chosen unrelated individual would be included as a possible contributor to the DNA profile. *See Young v. United States*, 63 A.3d 1033, 1056 (D.C. 2013) ("What

difference could it really make to a jury, for example, if the RMP were increased even a thousand-fold, to one in 2.8 quadrillion? That still would be an extremely low random match probability.").

We conclude that the trial court could have reasonably determinized that Lewis failed to establish that he was prejudiced by trial counsel's failure to retain a DNA expert.

### 2. Failure to interview and present potential alibi witnesses

Next, we consider whether Lewis established that trial counsel rendered ineffective assistance by failing to interview potential alibi witnesses. Lewis contends that trial counsel rendered ineffective assistance by failing to interview potential fact witnesses who might have been able to provide an alibi or otherwise testify as to the "improbability" that Lewis "committed the offense."

In support of this claim, Lewis relies on the affidavits of three potential alibi witnesses: his brother, his ex-girlfriend, and his cousin. In the affidavits, each witness made general assertions that Lewis could not have committed the offense because he was always home with his family. But none of them attested to Lewis's whereabouts on the date of the offense. Lewis speculates that, had trial counsel contacted these witnesses before trial, "he might well have been able to elicit from them specific facts about the actual night in question and the reasons they were each sure [Lewis] had been with them then."

To establish prejudice because of trial counsel's failure to call these witnesses during the guilt-innocence phase of trial, Lewis is required to show that he would have benefited from their testimony. *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) ("We stated that the 'failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony.'"). Lewis has failed to do so. Lewis would not have benefited in any meaningful way from the testimony of these witnesses because the testimony does not actually provide an alibi for Lewis at the time of the offense. *See id.* at 895 (holding that defendant was not prejudiced by trial counsel's failure to call alibi witness when witness was unable to place defendant in location other than scene of crime at relevant time). Lewis's speculation that trial counsel could have elicited further testimony from these witnesses is insufficient to support a claim of ineffective assistance. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) ("Ineffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.'").

We conclude that the trial court could have reasonably determinized that Lewis failed to establish that he was prejudiced by trial counsel's failure to interview these witnesses.

### 3.     Failure to develop mitigating evidence

Finally, we consider whether Lewis established that trial counsel rendered ineffective assistance by failing to develop mitigation evidence to present during the punishment phase of trial.

In support of his claim that trial counsel rendered ineffective assistance during the punishment phase of trial, Lewis relies on the affidavits of his brother, ex-girlfriend, cousin, and mother, all of whom state they would have testified for Lewis had they been asked. Lewis contends that trial counsel's failure to interview these four witnesses and present their testimony during punishment constituted ineffective assistance. We disagree.

The record does not show that Lewis would have benefited from the testimony of these four potential witnesses. *See Lumpkin v. State*, 129 S.W.3d 659, 665 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding that defendant may base ineffective-assistance claim on failure to present witnesses only if defendant can show that witnesses were available and that their testimony would have benefitted defendant).

Lewis's brother submitted an affidavit stating that, while in school, Lewis was placed in special education classes. But the PSI Report presented to the trial court already stated that Lewis had only completed the ninth grade, had been

placed in "behavioral classes" while in school, and had experienced "difficulty with reading."

Lewis's ex-girlfriend submitted an affidavit stating that, in 2015, Lewis smoked a cigarette that was "laced" with "some kind of drug" and suffered a "head injury" in a car accident, both of which may have resulted in "behavioral changes." But the sexual assault for which Lewis was convicted occurred in 2014. Lewis does not explain how these events that occurred after the offense would have been relevant in assessing his punishment.

Lewis's mother submitted an affidavit that provided essentially the same testimony as Lewis's ex-girlfriend, except that she said that the car accident occurred in 2013, not 2015. However, the record shows that, unlike Lewis's brother and ex-girlfriend, trial counsel contacted Lewis's mother on multiple occasions. Presumably, trial counsel's decision not to call Lewis's mother to testify to Lewis's character was based on legitimate trial strategy. For example, trial counsel could have reasonably determined that any nominal benefit from testimony from Lewis's mother (or from his brother or ex-girlfriend, for that matter) would be outweighed by the risk that the State would elicit prejudicial testimony on cross-examination that Lewis had a history of assaultive behavior and was becoming increasingly aggressive. *See Bone*, 77 S.W.3d at 834–35 (observing that trial counsel could have reasonably determined that potential benefit of introducing

mitigating testimony during punishment phase was outweighed by risk of unfavorable counter-testimony).

The final affidavit submitted by Lewis's cousin does not contain any information pertinent to the issue of punishment. Although Lewis refers to trial counsel's failure to interview all four potential witnesses, Lewis does not attempt to demonstrate how his cousin's testimony would have been beneficial at sentencing.

Lewis further contends that trial counsel should have presented Lewis's medical records from a psychiatric hospital to which he was admitted in 2015. Again, we disagree that Lewis would have benefited from the introduction of these records, which show that he was admitted in July 2015 for choking his then-pregnant girlfriend and pushing her against a wall. *See Sanders v. State*, No. 01-15-00954-CR, 2017 WL 2806785, at *4 n.5 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (noting that "emphasizing [defendant]'s mental health might have resulted in a longer sentence"); *Powell v. State*, No. 01-11-01035-CR, 2013 WL 4507943, at *9 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.) (mem. op., not designated for publication) (recognizing that "evidence of a defendant's mental illness can be either a mitigating factor *or an aggravating factor* for the trial court to consider when assessing punishment"); *see also Bell v. State*, 938 S.W.2d 35, 48 (Tex.

Crim. App. 1996) (evidence of mental retardation "could have a mitigating or aggravating effect").

Finally, Lewis complains about various aspects of trial counsel's closing argument at the sentencing hearing. But because the record is silent as to trial counsel's strategy, Lewis cannot show that trial counsel's performance was deficient. Moreover, the record reflects that trial counsel used closing argument to highlight mitigating evidence contained in the PSI Report. Trial counsel emphasized that Lewis was only a teenager at the time of the offense; that he may have been under the influence of narcotics at the time of the offense; that he lacked positive male guidance; and that he suffered from depression. And although the State sought a sentence of 99 years due to the egregious nature of the offense, the trial court imposed a more lenient sentence of 60 years.

We conclude that the trial court could have reasonably determinized that Lewis failed to establish that he was prejudiced by trial counsel's failure to develop mitigating evidence to present during the punishment phase of trial.

We hold that the trial court did not abuse its discretion in denying Lewis's motion for new trial. Accordingly, we overrule Lewis's second and third issues.

## Conclusion

We affirm the trial court's judgment.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).