

**In the**
**Court of Appeals**
**Second Appellate District of Texas**
**at Fort Worth**

_____

No. 02-19-00279-CR
_____

HABIB H. ELMAWLA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 1
Tarrant County, Texas
Trial Court No. 1560232

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

After a jury found appellant Habib H. Elmawla guilty of terroristic threat, the trial court sentenced him to 200 days in the Tarrant County jail, suspended his sentence, and placed him on community supervision for 16 months. In one point, Elmawla argues that the trial court erred in permitting "expert" police testimony vouching for the complaining witness's credibility. We agree that the trial court erred, but we hold that the error was harmless, overrule Elmawla's point, and affirm the trial court's judgment.

## Standard of Review—Evidentiary Rulings

A trial court exercises wide discretion in deciding whether to admit evidence, and absent an abuse of discretion, we may not disturb its evidentiary rulings. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *Ferguson v. State*, No. 02-16-00451-CR, 2017 WL 6047667, at *4 (Tex. App.—Fort Worth Dec. 7, 2017, pet. ref'd) (mem. op., not designated for publication). As long as a trial court's evidentiary rulings fall within the zone of reasonable disagreement, we will uphold them. *Winegarner*, 235 S.W.3d at 790; *Ferguson*, 2017 WL 6047667, at *4. The same is true if the trial court's rulings are correct under any theory of law applicable to the case. *Winegarner*, 235 S.W.3d at 790; *Ferguson*, 2017 WL 6047667, at *4.

## A. Officer Macken did not testify as an expert, and Elmawla is not asserting that he did.

Elmawla complains about Officer Kevin Macken's "expert" testimony, and within his brief, he cites Rule 702 of the rules of evidence. *See* Tex. R. Evid. 702 ("Testimony by Expert Witness"). The State contends that Officer Macken did not testify as an expert and that Elmawla's reliance on Rule 702 misses the mark. We agree that Officer Macken did not testify as an expert, but we disagree that Elmawla's trial objections or appellate arguments rely on Officer Macken's status as an expert or uniquely on Rule 702.

At trial, when Officer Macken testified about the complainant's credibility, Elmawla objected based on "relevance" and "bolstering." On appeal, Elmawla argues that neither experts nor lay witnesses are allowed to testify as to another witness's credibility because jurors—not witnesses—determine credibility issues. Further, Elmawla argues that the jury likely gave Officer Macken's credibility determinations greater weight by virtue of his experience and training as a police officer. *See Loserth v. State*, 985 S.W.2d 536, 544 n.3 (Tex. App.—San Antonio 1998, pet. ref'd). We understand Elmawla's point to be that the harm in admitting this inadmissible testimony was that the jury gave Officer Macken's credibility testimony additional weight because he had more expertise and training in family-violence matters than the average juror. Indeed, one of the first areas that Officer Macken testified about was his training and experience as a police officer. He then moved on to discuss his

3

experience in cases specifically involving domestic violence.[1]  But neither Elmawla's

trial objections nor his appellate arguments are premised on Officer Macken's status

as an expert as contemplated under Rule 702.  *See* Tex. R. Evid. 702.

## B. Over objection, Officer Macken testified that he believed the complainant was telling the truth.

The essence of Elmawla's complaint is that Officer Macken's testimony directly

commented on the complainant's credibility.  Elmawla points to two instances where

this occurred.

In the first instance, the prosecutor directly asked Officer Macken whether he

thought the complainant was telling the truth:

> [PROSECUTOR]: After speaking with [the complainant,] did you believe what she was telling you?
>
> [OFFICER MACKEN]: Yes, ma'am.
>
> [DEFENSE COUNSEL]: Object to relevance.  Whether he believes it or not is not relevant, Your Honor.
>
> THE COURT: Did he make any decision in this case?
>
> [PROSECUTOR]: Yes, Judge.  He was part of the decision to file the case.
>
> THE COURT: I'll overrule the objection.
>
> [PROSECUTOR]: You can answer.  Did you believe what [the complainant] told you happened?

---

[1] At the time of the offense, Officer Macken had only been sworn in as an officer for less than three months and was still in the process of completing his in-field training.

[OFFICER MACKEN]: Yes, ma'am.

And in the second instance, which followed closely on the heels of the first, the prosecutor asked Officer Macken why he believed the complainant was credible:

[PROSECUTOR]: Why did you find [the complainant] credible?

[DEFENSE COUNSEL]: Objection, relevance and bolstering as a witness, Judge.

THE COURT: I'll overrule the objection.

[PROSECUTOR]: You can answer as to why you found her credible.

[OFFICER MACKEN]: I could just tell. The fear. She seemed very scared. She had both of her children there. When we went outside, she had all [their] other belongings inside her car, her vehicle. The whole time she just seemed very nervous, on edge.

The prosecutor followed up this second instance with yet a third instance:

[PROSECUTOR TO OFFICER MACKEN]: In your experience and training as a police officer but also just as a person judging her credibility, did she seem genuinely terrified that this threat might happen?

[DEFENSE COUNSEL]: Again, Judge, I'm going to object to relevance and speculation and bolstering.

[PROSECUTOR]: Judge, he can say what she told him if it's something that she's already testified to, and then determine whether he believed her or not.

[DEFENSE COUNSEL]: I would also object on the grounds that it invades the province of the jury to judge the credibility of the witness.

[PROSECUTOR]: Again, Judge, he can testify as to why he ultimately decided that the case needed to be filed.

5

THE COURT: I'm going to sustain the objection.

The trial court sustained Elmawla's objection on this third occasion, making it moot for an error analysis. We will, however, consider the third instance as part of our harm analysis.

## C. Elmawla preserved his complaint.

The State argues that Elmawla's "relevance" and "bolstering" objections did not preserve his complaint on appeal and that his appellate argument does not comport with his objections at trial, so, the State concludes, Elmawla has preserved nothing for review. *See Farr v. State*, No. 02-16-00220-CR, 2017 WL 1089692, at *5 (Tex. App.—Fort Worth Mar. 23, 2017, no pet.) (mem. op., not designated for publication) (citing *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)). We disagree.

On appeal, Elmawla makes essentially the same argument he made in the trial court—he argues that the jury alone is supposed to determine which witnesses to believe. In other words, whether Officer Macken believed the complainant was irrelevant, and to the extent that Officer Macken vouched for the complainant's credibility, he improperly bolstered her credibility.

While a defendant's bolstering objection might engender some ambiguity, *see Rivas v. State*, 275 S.W.3d 880, 886–87 (Tex. Crim. App. 2009), the question is whether the trial court understood the objection. *See id.* Here, the prosecutor repeatedly and

directly asked Officer Macken to comment on or to effectively vouch for the complainant's credibility—which improperly encroached on the jury's role—and in the process used Officer Macken's own training and experience to add weight to his credibility determinations, which served only to exacerbate the error. Had Elmawla objected without giving any grounds, his objection would have been apparent from the context. *See* Tex. R. App. P. 33.1(a)(1)(A). We hold that the trial court would have understood the essence of Elmawla's objections. *See* Tex. R. App. P. 33.1(a)(1)(A).

## D. The jury is the exclusive judge of the credibility of the witnesses.

And Elmawla is correct. The Texas Code of Criminal Procedure provides that the jury is the exclusive judge of the facts—the jury alone decides whom to believe and what weight to give the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Reed v. State*, No. 01-15-00481-CR, 2017 WL 1352131, at *3 (Tex. App.—Houston [1st Dist.] Apr. 13, 2017, pet. ref'd) (mem. op., not designated for publication). Under Article 38.04, whom Officer Macken chose to believe was irrelevant, and his testimony to that effect improperly invaded the province of the jury to make that determination for itself. *See Reed*, 2017 WL 1352131, at *3 ("It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness and such opinion is therefore inadmissible evidence.") (citing *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)).

Whether through an expert or lay witness, the vouching for another witness's credibility is irrelevant and inadmissible because it goes beyond assisting the trier of fact in understanding the evidence or determining a fact in issue—it decides an issue for the jury. *Id.* (citing *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993)); *Blackwell*, 193 S.W.3d at 21; *see* Tex. R. Evid. 701.

As Judge Baird pointed out decades ago (and which is still true today), witnesses make poor jurors and should not be allowed to guide the jury on which other witnesses to believe or disbelieve:

> Simply put, it is the jury's domain to interpret facts in the decision of the ultimate issues. Tex. Code. Crim. Proc. Ann. art. 38.04. It is fundamental to the notion of "presumption of innocence" that the jury, not the witnesses, determine the ultimate issues because the jury is in a better position, removed from the emotional circumstances, to determine what happened in the individual cases. [*Id.*] art. 38.03.

*Fairow v. State*, 943 S.W.2d 895, 904 (Tex. Crim. App. 1997) (Baird, J., concurring). "Such testimony 'crosses the line' between evidence that will genuinely assist the jury and that which usurps the jury's function to judge the credibility of witnesses." *Sandoval v. State*, 409 S.W.3d 259, 291 (Tex. App.—Austin 2013, no pet.) (citing *Pavlacka v. State*, 892 S.W.2d 897, 903 n.6 (Tex. Crim. App. 1994)); *see* Tex. R. Evid. 701(b).

## E. The trial court erred.

We hold that the trial court erred in overruling Elmawla's objections. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Rivas*, 275 S.W.3d at 887; *Reed*, 2017 WL 1352131,

at *3. Having held that the trial court erred, we turn to whether the error was harmful.

## Standard of Review—Harm

"As a general rule, error in the admission or exclusion of evidence does not rise to a constitutional level." *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.—El Paso Aug. 29, 2002). We disregard any non-constitutional error, defect, irregularity, or variance that does not affect an appellant's substantial rights. Tex. R. App. P. 44.2(b); *Ferguson*, 2017 WL 6047667, at *4. We will not overturn a case for a non-constitutional error if, after examining the record as a whole, we have a fair assurance that it did not influence the jurors or influenced them only slightly. *Hayes v. State*, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002); *Ferguson*, 2017 WL 6047667, at *4; *Henderson v. State*, No. 02-16-00208-CR, 2017 WL 3184482, at *2 (Tex. App.—Fort Worth July 27, 2017, pet. ref'd) (mem. op., not designated for publication). In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Ferguson*, 2017 WL 6047667, at *4; *Henderson*, 2017 WL 3184482, at *2. A trial court's error in admitting evidence is harmless when similar evidence is properly admitted. *Henderson*, 2017 WL 3184482, at *2; *Sandone v. State*, 394 S.W.3d 788, 794 (Tex. App.—Fort Worth 2013, no pet.).

For the reasons given below, we hold that the error was harmless.

## A. The third time was not a charm.

As noted earlier, the trial court allowed Officer Macken to vouch for the complainant's credibility two times before finally sustaining Elmawla's third objection to this testimony. After Elmawla lodged his third objection, the jury observed Elmawla successfully block the State's attempt to have Officer Macken vouch for the complainant's credibility. For purposes of weighing against harm, this may not be much, but it is a start.

## B. Only three witnesses testified.

The jury heard testimony from three witnesses: the complainant, Officer Macken, and a Detective Spaun.[2] Additionally, the State admitted a number of exhibits—(1) photographs showing how Elmawla had allegedly assaulted the complainant with a belt on another occasion, (2) a map showing the distance from the complainant's apartment to the police station where the complainant had sought help after Elmawla made his terroristic threat, (3) a video showing the complainant's (and her children's) interactions with Officer Macken at the police station and showing Officer Macken accompanying the complainant and her children to a gas station, and (4) a photograph of a knife comparable to the one that Elmawla had left on the complainant's bed after making the terroristic threat—all which went to credibility

---

[2]Detective Spaun was not forthcoming about his first name.

issues.  Elmawla does not dispute the sufficiency of the evidence, so the case turned on whether the jury believed the complainant.

## C. Detective Spaun provided testimony similar to Officer Macken's without objection.

After Officer Macken testified, the State called Detective Spaun, and he too stated that he found the complainant credible.  This time, however, Elmawla did not object:

> [PROSECUTOR]: And in this particular case did you find any evidence that gave you concerns about the credibility of the complaining witness?
>
> [DETECTIVE SPAUN]: No, I did not, and in the course of my investigation with the courts and with Child Protective Services.
>
> [PROSECUTOR]: Ultimately did you proceed with getting a warrant for the Defendant in this case[]?
>
> [DETECTIVE SPAUN]: Yes.  The disposition of the case resulted in me writing the warrant for a terroristic threat.
>
> [PROSECUTOR]: And after you had done all your investigation in this case, ultimately why did you make the decision to proceed with requesting a warrant?
>
> [DETECTIVE SPAUN]: So I don't know that there was a -- kind of a light bulb moment.  It was a culmination of an extended investigation.  I think the thing that stood out the most was the fact of dealing with the victim on the phone and listening to her account, the fact that she outlined that once the alleged threat was made, she made plans at that moment because it was significant enough for her to feel she needed to uproot her children and get out of that situation.  And she didn't feel safe at the time.  I think it was delayed by a day, and she found an opportunity and loaded the children up and took off and went to the nearest police station.

11

As an investigator that's something that I would take into account. I've had similar cases where they stay or there's just something missing in the story, but if you're willing to uproot your life over a threat, that's very significant to me as an investigator to say that this person -- I believe this person believed the threat was credible.

Because another police officer was allowed, without objection, to vouch for the complainant's credibility, any potential harm caused by Officer Macken's testimony was attenuated. *See Henderson*, 2017 WL 3184482, at *2; *Sandone*, 394 S.W.3d at 794.

## D. The jury heard evidence that the standard for an arrest differs from the standard for a conviction.

Detective Spaun informed the jury that all he needed for an arrest was probable cause:

[DEFENSE COUNSEL]: What standard or burden of proof do you have to follow in order to arrest someone? What do you have to meet?

[DETECTIVE SPAUN]: Probable cause.

[DEFENSE COUNSEL]: And that's a lower burden than beyond a reasonable doubt, right?

[DETECTIVE SPAUN]: You know what? This is the -- I forget the terms of this, but probable cause is the minimum standard that we need to make in an arrest, so -- I don't want to show my age too much, I guess.

[DEFENSE COUNSEL]: But it's lesser than beyond a reasonable doubt, right?

[DETECTIVE SPAUN]: I don't recall. I'm going to get -- they're going to chew me out for this afterwards probably.

12

Although Detective Spaun muddled the distinction between probable cause and proof beyond a reasonable doubt, the jury heard evidence that for purposes of fulfilling his role in the process, the credibility standard differed.

## E. The State did not emphasize Officer Macken's testimony during final argument.

During final argument, the State focused on Detective Spaun's testimony, not Officer Macken's:

> [PROSECUTOR]: Now, we heard the testimony of [Detective] Spaun and saw that this Defendant when he spoke with him on the phone tried to give all kinds of explanations as to what was going on, and [Detective] Spaun told us that credibility isn't an issue. He investigated and found no credibility issues with [the complainant] and found no validity to anything that the Defendant was trying to say.

As we discussed earlier, Detective Spaun's testimony regarding the complainant's credibility came in without objection. Likewise, when the prosecutor made this argument, Elmawla did not object.

## F. The jury charge militated against any harm.

The court's charge told the jurors that they were the judges of the facts. The charge is consistent with the jurors' deciding whom to believe.

The court's charge also told the jurors that the preliminary steps—the arrest, confinement, and indictment—gave rise to no inference of guilt:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial.

Thus, the charge instruction informed the jury that the officers' believing and acting on the complainant's allegations was not evidence of Elmawla's guilt.[3] The charge instructed the jury to convict Elmawla only if it found that the State had proven each element of the offense beyond a reasonable doubt.

Absent evidence to the contrary, we presume that a jury follows the instructions set forth in the court's charge. *Scott v. State*, 555 S.W.3d 116, 124 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Here, there is no evidence to the contrary, so we presume that the jury followed the charge's instructions.

## G. The error was harmless.

For the above reasons, after examining the record as a whole, we have a fair assurance that the errors did not influence the jurors or influenced them only slightly. *Hayes*, 85 S.W.3d at 816; *Ferguson*, 2017 WL 6047667, at *4; *Henderson*, 2017 WL 3184482, at *2. We thus hold that the error was harmless and overrule Elmawla's point.

---

[3]This is precisely why Officer Macken's testimony was irrelevant. *See* Tex. R. Evid. 401(b) ("Evidence is relevant if . . . *the fact is of consequence* in determining the action." (emphasis added)).

## Conclusion

Having overruled Elmawla's point, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 15, 2021