**Opinion issued October 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00782-CR

————————————

**JOSE SALOMECHAVEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 371st District Court[1]**
**Tarrant County, Texas**
**Trial Court Case No. 1570446D**

---

[1]    Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Second District of Texas to this Court. *See* Misc. Docket No. 19–9091, Transfer of Cases from Courts of Appeals (Tex. Oct. 1, 2019); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**MEMORANDUM OPINION**

Jose Salome Chavez[2] appeals his convictions for continuous sexual abuse of a child, for which he was sentenced to life imprisonment, and indecency with a child by contact, for which he was sentenced to 20 years' imprisonment and a $10,000 fine, respectively. TEX. PENAL CODE §§ 21.02(b), 21.11(a)(1), (c)(1). On appeal, he contends that the evidence is insufficient to support his convictions, that the trial court erred in holding punishment proceedings in his absence, and that he received ineffective assistance of counsel during punishment. We affirm.

**Background**

Chavez was indicted on one count of continuous sexual abuse of a child, three counts of aggravated sexual assault of a child, and two counts of indecency by contact with a child. He pleaded not guilty to each of the six counts and proceeded to a jury trial.

At trial, A.C. testified that Chavez was her father's brother, and he lived with her family from when she was six years old to when she was ten years old. At the time of trial, he was in his thirties, and she was 16 years old. A.C. testified that the first time Chavez abused her was when she was six years old. They were alone in

---

[2] The trial court record, including the indictment and judgments, and thus the caption on appeal, refer to the appellant as Jose Salomechavez. Our review of the record indicates that his name is Jose Salome Chavez. We will refer to the appellant as "Chavez" throughout the opinion.

his room at her house. She was on his bed, lying on her right side, and he was behind her facing her back. He told her to be quiet, pulled her pants and underwear down to her knees, pulled down his pants "to where his penis could come out" and "put his penis in [her] butt." He also penetrated her vagina with his penis and ejaculated on her "butt."

Several months later, he sexually assaulted her again. They were alone in his room on the bed, and he put his penis in her vagina. A.C. testified that similar abuse occurred multiple times while Chavez lived with her and her family.

Chavez continued to abuse A.C. after he moved out of the house and moved in with his brother, another of A.C.'s uncles. A.C. frequently visited to play with her younger cousins. The first time it happened at her uncle's house, A.C. and her brothers were in Chavez's room. Chavez turned on a movie for A.C.'s brothers to watch and told A.C. to get on his bed. While her brothers were on the floor facing the television and watching the movie, Chavez pulled down A.C.'s pants and underwear, pulled his own pants down, put his penis in her vagina, and moved "forwards and backwards." His hands were holding A.C. firmly around her stomach, "like a hug." After he ejaculated on her "butt," he gave her money.

A.C. testified that Chavez penetrated her vagina more times than she could remember and that it happened at least five times at her uncle's house. She testified that the last time Chavez penetrated her vagina occurred when she was 13 years old.

Chavez put his penis in her vagina and was moving "forward and backward" until she hit him and left the room.

A.C. testified that on another occasion, when she was fourteen years old, Chavez touched her breast. They were in her parents' truck, and he "started to chew on [her] breasts on top of [her] clothes." He touched mostly her right breast with one hand.

A.C. testified that Chavez tried to kiss her once and tried to make her touch his penis. Over the years, he gave her money, in amounts that varied from $5 to $100. A.C. did not want his money, so she gave it to her siblings.

A.C. eventually told an online friend about what was happening with Chavez, and the friend encouraged her to tell her parents. After a party at her church, where she danced with Chavez at her father's suggestion, she told her parents about the abuse. Her mother immediately called the police, who came to her house to investigate. A.C. testified that after she told her parents about the abuse, she became depressed and considered taking pills to commit suicide. She sought residential and outpatient mental health treatment.

A.C.'s mother testified that she had been concerned about her daughter's mood since she was six years old. At six, A.C. expressed a desire to kill herself so she could be alone. A.C's mother took her to a psychologist but did not learn what was causing her suicidal ideations. Over the years, A.C. remained sad, depressed,

4

and distant. A.C.'s mother testified about the night that A.C. told her about Chavez's actions and the impact the abuse had on her daughter.

Sergeant M.D. Lopez of the City of Forest Hills Police Department testified that he responded to a sexual assault call at A.C.'s house in September 2018. When he arrived, A.C. told him details of abuse by Chavez that had occurred multiple times since she was six years old.

Nurse Stacey Henley of Cook Children's Medical Center testified that she is a sexual assault nurse examiner, also known as a "SANE" nurse, who examined A.C. in October 2018. A.C. reported to Henley that she had been abused between 20 and 30 times. Henley noted no injuries to A.C.'s vagina or anus, but she did not expect to see any injuries due to the passage of time and how quickly those body parts heal.

Alexis Harrison testified that she performed a forensic interview of A.C. in October 2018. In addition to the details that A.C. testified to regarding Chavez putting his penis in her vagina and anus, A.C. also told Harrison that Chavez had licked her vagina with his tongue.

The defense called two witnesses. First, A.C.'s father, who is Chavez's brother, testified that his daughter had been sad. He testified that he believed his daughter's story.

Chavez testified in his own defense. He maintained that he was innocent. According to Chavez, while he danced with A.C. at a church party, she asked him

for a tablet computer. When he said he would not buy one for her, she became upset. In response, A.C. threatened that she was going to tell her parents that he was molesting her. He also testified that he gave cash gifts to all of his nieces and nephews and that he did so in front of their parents.

The jury found Chavez guilty of two counts in the indictment: continuous sexual assault of a young child and indecency with a child by contact. Chavez chose jury sentencing. Neither the State nor Chavez put on additional evidence during the punishment phase. After each side rested, the court excused the jury so that the attorneys could finalize the punishment charge. The court recessed for 15 minutes, and when the parties returned for the charge conference, Chavez was no longer present. Chavez's counsel stated that he had no objections to going forward without his client and advised the court that Chavez had left to take care of a medical issue. The court held the charge conference, and neither side had objections to the charge.

Chavez was present when the jury returned for instructions and closing arguments. He was also present when the jury returned its punishment verdict and when the trial court pronounced the judgment and sentenced him. Pursuant to the jury's recommendation, Chavez was sentenced to life imprisonment for continuous sexual assault of a child and 20 years' imprisonment and a $10,000 fine for indecency with a child by contact. He appealed.

## Sufficiency of the Evidence

In his first issue, Chavez argues that the evidence was insufficient to support his convictions.[3] We disagree.

### A. Standard of Review and Applicable Law

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–20 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. Jurors may

---

[3] Chavez's brief states, "The evidence was legally insufficient to sustain Appellant's conviction." We evaluate the sufficiency of the evidence for both convictions.

choose to believe or disbelieve any part of a witness's testimony. *Gonzalez v. State*, 522 S.W.3d 48, 56 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We resolve inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see Clayton*, 235 S.W.3d at 778 ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

If an appellate court finds the evidence insufficient, it must reverse the judgment and enter an order of acquittal. *Estrella v. State*, 546 S.W.3d 789, 797 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

The uncorroborated testimony of either the child or an outcry witness is sufficient to support a conviction for indecency with a child or sexual assault of a child. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing TEX. CODE CRIM. PROC. art. 38.07). The State has no burden to produce any corroborating or physical evidence. *Martines v. State*, 371 S.W.3d 232,

240 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Courts give wide latitude to testimony provided by child victims of sexual abuse. *Jones*, 428 S.W.3d at 169.

A person commits the offense of continuous sexual abuse of a child if the person commits two or more acts of sexual abuse during a period that is 30 or more days in duration, against a child victim that is younger than fourteen years of age. TEX. PENAL CODE § 21.02(b). An "act of sexual abuse" includes an act in which the person causes the sexual organ of a child or the anus of a child to contact the actor's mouth or actor's sexual organ. *Id.* §§ 21.02(c)(4); 22.021(a)(1)(B)(iii–iv), (a)(2)(B).

A person commits the offense of indecency with a child by contact by touching the anus, breast, or any part of the genitals of a child younger than 17 years of age with the intent to arouse or gratify the sexual desire of any person. TEX. PENAL CODE § 21.11(a)(1), (c)(1).

## B.    Analysis

Chavez contends that the evidence is insufficient because A.C.'s testimony was not credible. Specifically, he contends that she did not make an outcry until several years after the alleged abuse began. He argues that the abuse is unlikely to have occurred because there was no evidence of blood in A.C.'s underwear or bedding, despite her testimony that he penetrated her multiple times. He points out that the SANE nurse made no objective findings, and he argues that it is improbable

that intercourse occurred while A.C.'s brothers watched a movie in the same room. Finally, he emphasizes his own testimony denying the allegations.

A.C. testified in detail about several instances of sexual abuse from when she was six years old until she was thirteen years old. She testified that beginning when she was six years old, Chavez put his penis in her vagina on multiple occasions. When she was ten years old, Chavez moved in with A.C.'s uncle. When she visited her cousins at her uncle's house, Chavez put his penis in her vagina while her siblings were on the floor of the same room focused on a movie. A.C. also testified that Chavez grabbed and "chewed" on her breast while she was in her parents' truck. The jury heard from a police officer, SANE nurse, and forensic interviewer who testified that A.C. told each of them similar details of the abuse.

In contrast, Chavez testified that he did not commit any act of sexual abuse against A.C. He claimed that she made up the allegations because he would not dance with her a second time at a church party and refused to buy her a tablet computer. He testified that A.C. told him that she was going to tell her parents that he had been molesting her if he did not buy her the tablet computer.

As to Chavez's specific arguments about the evidence, A.C. testified that on occasion, she had lied, but she was not lying about the abuse. The forensic interviewer and SANE nurse testified that children are known to lie occasionally, but neither questioned the veracity of A.C.'s statements. A.C. never testified that the

abuse caused her to bleed, but she did testify that the sexual acts hurt her. The SANE nurse explained to the jury that it was not uncommon for someone who had been assaulted as many times as A.C. had to have no injuries. Additionally, A.C. denied that she asked Chavez to buy her a tablet computer. She testified that Chavez gave her money on multiple occasions and because she did not want it, she gave it to her siblings. Chavez also testified that he gave his nieces and nephews cash.

According to A.C., Chavez made her feel the abuse was her fault and that her parents would get mad at her if she said something. Her mother testified that she noticed changes in A.C., such as being sad, depressed, and distant, but she did not know what caused the behavior.

We defer to the jury's credibility determinations and resolve inconsistencies in the evidence in favor of the verdict. *Brooks*, 323 S.W.3d at 899; *Curry*, 30 S.W.3d at 406. Considering all the evidence in the light most favorable to the verdict, the evidence was such that any rational trier of fact could have found beyond a reasonable doubt that Chavez committed the offenses of continuous sexual abuse of a child and indecency to a child by contact. *Laster*, 275 S.W.3d at 517.

We overrule Chavez's first issue.

### Absence from the Punishment Charge Conference

In his second issue, Chavez contends that the trial court abused its discretion by conducting the punishment charge conference in his absence. We disagree.

11

## A.    Standard of Review

The Confrontation Clause of the Sixth Amendment of the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. CONST. amend. VI. The Confrontation Clause protects a defendant's right to physically face those witnesses who testify against him as well as his right to conduct cross-examination. *Scott v. State*, 555 S.W.3d 116, 125 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). The Court of Criminal Appeals has held that "within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, absent a waiver of that right through defendant's own conduct." *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (internal citations removed) (quoting *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex. Crim. App. 1979)). This right is addressed in article 33.03 of the Code of Criminal Procedure, which provides:

> In all prosecutions for felonies, the defendant must be personally present at the trial . . . provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

TEX. CODE CRIM. PROC. art. 33.03.

When there is information before the trial court to support a conclusion that the defendant's absence from the trial is voluntary after a jury has been selected, the

12

trial court may permissibly continue the trial in the defendant's absence. *See Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984). Thus, a defendant may waive his Sixth Amendment right to be physically present at trial to confront the witnesses against him if, after the jury has been selected with him in attendance, he voluntarily absents himself from the proceedings. *See Miller*, 692 S.W.2d at 90; *see also Taylor v. United States*, 414 U.S. 17, 18–20 (1973) (per curiam) (holding that defendant waives Sixth Amendment right to be present if, after trial has begun in his presence, he voluntarily absents himself from proceedings). A trial court's determination that a defendant's absence was voluntary is reviewed for an abuse of discretion. *Miller*, 692 S.W.2d 88, 91 n.4; *Moore*, 670 S.W.2d at 261. "The voluntariness of a defendant's absence is generally judged in hindsight on appeal and an appellate court will not disturb the trial court's findings that a defendant voluntarily absented himself form the trial court proceedings when the defendant fails to put on any evidence to refute that determination." *Simon v. State*, 554 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Kline v. State*, 737 S.W.2d 895, 900 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

### B.    Analysis

It is undisputed that Chavez was present during voir dire, the presentation of evidence in the guilt/innocence phase, and the recitation of the jury's verdicts after deliberation. Chavez was also present at the beginning of the punishment

proceedings. Neither the State nor Chavez presented further evidence or called witnesses during the punishment hearing. The record indicates that Chavez was present when each side rested and when the court excused the jury so that the attorneys could finalize the jury charge for punishment. The court recessed for fifteen minutes, and when the parties returned for the formal charge conference, Chavez was no longer present. After the court was informed of Chavez's absence, his counsel stated, "I have no objections with going forward without my client being here. He's had a medical issue and he's left, and I think we should proceed." The record reflects that Chavez was present again when the jury returned to the courtroom for the court's charge and the punishment closing arguments. When Chavez returned, he did not express any concern to the trial court about his absence during the charge conference.

Generally, to preserve a complaint for appellate review, the party must make his complaint to the trial court by timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a). Confrontation Clause claims are subject to this general preservation requirement. *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). A defendant's failure to object on Confrontation Clause grounds at trial waives a Confrontation Clause complaint for appellate review. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding that

14

defendant failed to preserve Confrontation Clause complaint for appellate review when trial objection was solely on hearsay grounds); *Scott*, 555 S.W.3d at 126.

Defense counsel did not object on any grounds, including the Confrontation Clause or article 33.03 of the Code of Criminal Procedure, nor did he argue that Chavez's absence was possibly involuntary or ask for a continuance. We hold that Chavez has waived this issue because he failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a).

Even if Chavez had preserved this complaint for review, the trial court would not have abused its discretion by continuing with the punishment charge conference. Chavez does not contest that he was present at both points of trial required by article 33.03. *See* TEX. CODE CRIM. PROC. art. 33.03 (court may continue a trial to conclusion if the defendant was present for jury selection and entering a plea to the indictment). Chavez was absent only for a brief amount of time during the punishment conference. His counsel told the court that Chavez had a medical issue and that the court should continue with the proceeding despite his absence. *Moore*, 670 S.W.2d at 261 (when there is evidence that defendant's absence is voluntary, the trial court may continue trial in defendant's absence).

Courts have held that a defendant's absence for medical issues can be voluntary. *See, e.g.*, *Smith v. State*, 494 S.W.3d 243, 253–54 (Tex. App.—Texarkana 2015, no pet.) (trial court did not abuse its discretion in proceeding with punishment

15

when defendant was hospitalized after attempt to commit suicide and record did not suggest that defendant was unable to decline medical treatment and leave the hospital); *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.) (no abuse of discretion in finding defendant voluntarily absented himself after attempted suicide by ingesting Tylenol and being placed in hospital). Chavez's counsel did not argue that his client's medical issue caused his absence to be involuntary. On this record, the trial court would not have abused its discretion by finding Chavez's absence was voluntary and continuing with the proceedings. *Moore*, 670 S.W.2d at 261.

Moreover, even if the trial court erred in conducting the hearing in Chavez's absence, it was not reversible error. Where the presence of a defendant does not bear a "reasonably substantial relationship to the opportunity to defend," no harm results from his absence from the proceedings against him. *Adanandus v. State*, 866 S.W.2d 210, 219 (Tex. Crim. App. 1993) (quoting *Cooper v. State*, 631 S.W.2d 508, 512 (Tex. Crim. App. 1982) overruled on other grounds by *Bell v. State*, 994 S.W.2d 173 (Tex. Crim. App. 1999)). To assess harm, we must address both harm under the rules of appellate procedure and whether the hearing bore a substantial relationship to Chavez's opportunity to defend himself. TEX. R. APP. P. 44.2(a); *Adanandus*, 806 S.W.2d at 220.

The charge conference involved the discussion of questions of law. As the Court of Criminal Appeals has observed, "[i]t is difficult to imagine a trial fraught with complex legal problems when there will not be occasions where counsel and the court will confer on questions of law at the bench or in chambers outside the presence of the defendant." *Mares v. State*, 571 S.W.2d 303, 307 (Tex. Crim. App. 1978). Both sides had rested before Chavez's absence. Chavez's argument that he was denied the opportunity to present evidence and the right to testify during the punishment phase is without merit. Even if Chavez had been present, the legal issues for the trial court to decide would not have changed, and we cannot conclude that the hearing bore a reasonably substantial relationship to Chavez's opportunity to defend. *Id.* (holding defendant's presence at charge conference did not bear a reasonably substantial relationship to the opportunity to defend); *see also* TEX. R. APP. P. 44.2(a). Because there is no evidence that harm occurred, even assuming error in continuing with the proceeding in Chavez's absence, the error does not constitute reversible error. *See Routier v. State*, 112 S.W.3d 554, 577–79 (Tex. Crim. App. 2003).

**Ineffective Assistance of Counsel**

In his third issue, Chavez contends that he received ineffective assistance of counsel because his counsel argued that he would be eligible for parole when parole is not available for the offense of continuous sexual assault of a child. He asserts that

17

"for defense counsel to make such an argument about parole when parole was not a possibility is fundamentally unfair and prejudiced Appellant." We disagree.

## A.    Standard of Review

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) a reasonable probability exists that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). The defendant bears the burden of proof on both issues, and failure to make either showing by a preponderance of the evidence will defeat his ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We apply the same two-prong *Strickland* standard of review for ineffective assistance of counsel claims in both the guilt/innocence phase of trial and the punishment phase of trial. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

Under the first *Strickland* prong, any judicial review of whether counsel's performance was deficient must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Thompson*, 9 S.W.3d at 813. We begin by presuming that trial counsel performed within professional norms. *Id.* We do not assume that counsel lacked a sound reason for making the choices he did; on the contrary, the defendant must demonstrate that no plausible reason exists for a particular act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); *Toledo v.*

18

*State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone*, 77 S.W.3d at 833. In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

Ineffective assistance of counsel prejudices a criminal defendant if there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, U.S. 466 at 697.

## B. Analysis

In his closing argument, Chavez's counsel told the jury, "It's hard for me to segue from my client is innocent to please be lenient on my client. But [in convicting Chavez of continuous sexual abuse of a child] you made a decision he will go away for 25 years and be eligible for parole after 12 and a half at a bare minimum." Counsel also asked the jury to consider the fact "that 12 and a half years' minimum is a long time" and to consider that Chavez would be approximately 45 years old when eligible for parole.

Parole was not a possibility for Chavez's term of confinement for continuous sexual abuse of a child. *See* TEX. GOV'T CODE § 508.145(a) (a person serving a sentence for an offense under section 21.02 of the Penal Code is not eligible for parole); TEX. PENAL CODE § 21.02 (defining the offense of continuous sexual abuse of a child). Chavez's counsel clearly erred in arguing to the jury that his client could be eligible for parole.

However, even if Chavez's counsel's argument during closing was so outrageous as to be ineffective, the error does not require reversal because Chavez has failed to meet his burden to establish that he was prejudiced. *See Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia*, 57 S.W.3d at 440); *see also Strickland*, 466 U.S. at 694. The record reflects that, despite counsel's error, any possible confusion was ameliorated by the State's clarifying argument and the jury charge. The State

addressed Chavez's counsel's incorrect argument immediately after it occurred.[4] In

the first lines of its closing argument on punishment, the State said:

> There's one thing I want to correct before I go forward. And even though you're not supposed to consider parole law when you are rendering your verdict here for punishment, continuous sexual abuse of a child, now that you found him guilty for that . . . is a sentence that as we talked about in jury selection, that the minimum is 25 years, and it's 25 years day for day, so there is no parole. So we are starting at 25 years on that offense.

The court also correctly instructed the jury that parole was not an option. The court's

punishment instruction stated, "With regard to the offense of continuous sexual

abuse of a young child or children, under the law applicable to this case, the

Defendant is ineligible for release on parole." The charge also instructed the jury not

to discuss how long Chavez would be required to serve any sentence of confinement

they decided to impose as such matters are within the exclusive jurisdiction of the

Board of Pardon and Paroles and the Governor of the State of Texas.

In evaluating jury instructions, both oral and written, juries are "presumed to

follow the trial court's instructions in the manner presented." *Walker v. State*, 300

S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd) (quoting *Kirk v. State*,

199 S.W.3d 467, 469 (Tex. App.—Fort Worth 2006, pet. ref'd)); *see also Young v.*

---

[4]    During voir dire, the State also told the veniremen that parole was not an option, explaining that the punishment for continuous sexual abuse of a child is "25 years to life in prison. No probation. No parole. 25 years day for day, up to life."

21

*State*, 283 S.W.3d 854, 882 (Tex. Crim. App. 2009) (Cochran, J., concurring) ("We must, however, 'presume [ ] that jurors, conscious of the gravity of their tasks, attend closely the particular language of the trial court's instruction in criminal cases and strive to understand, make sense of, and follow the instructions given them.'") (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)). Courts abandon the presumption only if there is evidence showing that the jury did not follow the instructions. *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). There is no evidence that the jury did not follow the court's instruction. Although the jury sent a note asking a question during deliberations, the question did not involve parole.[5]

Chavez has failed to meet his burden under the second *Strickland* prong to show that he was prejudiced such that but for counsel's deficiency the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. We overrule Chavez's third issue.

---

[5] The jury asked, "What is more serious, 99 years or life?" and the court responded, with no objections from counsel, "Under the law, I am not permitted to answer your question. Please confine your deliberations to the evidence and the Court's charge and continue your deliberations." The jury reached a verdict five minutes later, sentencing Chavez to the maximum sentence for each offense. *See Veytovich v. State*, No. 02-14-00212-CR, 2016 WL 354291, at *3 (Tex. App.—Fort Worth Jan. 28, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that appellant failed to show prejudice when jury assessed the maximum available punishment for continuous sexual abuse of a child and sexual assault of a child).

22

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Keyes, Kelly, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).